**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | | |
|---|---|---|
| JONATHAN BENNETT, CHRISTINA BENNETT, ACEJ HOLDINGS, LLC, D/B/A UNITED GUN SHOP, 5456 Randolph Road, Suit A, Rockville, MD 20852, | : : : | |
| Plaintiffs, | : | |
| v. | : | Civil No._____ |
| ANTHONY BROWN, in his individual capacity and official capacity as ATTORNEY GENERAL OF THE STATE OF MARYLAND, | : : | **JURY TRIAL DEMANDED** |
| —And— | : | |
| BRIAN SCHWALB, in his individual capacity and official capacity as ATTORNEY GENERAL OF THE DISTRICT OF COLUMBIA, | | |
| —And— | | |
| THE STATE OF MARYLAND, | | |
| —And— | | |
| THE DISTRICT OF COLUMBIA, | | |
| —And— | | |
| EVERYTOWN LAW, | | |
| Defendants. | | |

: : : : : : : : : : : : : :

## <u>VERIFIED COMPLAINT</u>

Plaintiffs, JONATHAN BENNETT, CHRISTINA BENNETT and ACEJ HOLDINGS, LLC d/b/a UNITED GUN SHOP of 5456 Randolph Road, Suite A, Rockville, MD 20852 ("Plaintiffs"), by and through their attorney, Daniel L. Cox, The Cox Law Center, LLC, for their

COMPLAINT against Defendants, sues ANTHONY BROWN, ATTORNEY GENERAL FOR THE STATE OF MARYLAND, the STATE OF MARYLAND, BRIAN SCWALB, ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, THE DISTRICT OF COLUMBIA, and EVERYTOWN LAW, (collectively, "Defendants") for violations and deprivations of civil rights under 42 U.S.C § 1983, et seq. ("Act"), damages and attorney's fees, and related violations of law towards Plaintiffs, demanding a TRIAL BY JURY, state as follows:

## PARTIES

1.      Plaintiffs Jonathan and Christina Bennett are residents of Maryland and owners of ACEJ Holdings, LLC, a federally licensed firearm dealer.

2.      Defendant Anthony Brown is the Attorney General of Maryland, sued in both his individual and official capacities.

3.      Defendant Brian Schwalb is the Attorney General for the District of Columbia, sued in both his individual and official capacities.

4.      Defendants the State of Maryland and the District of Columbia are government entities.

5.      Defendant Everytown Law is a legal organization that acted jointly with government defendants in the conduct giving rise to this action.

## JURISDICTION AND VENUE

6.      Pursuant to 42 U.S.C 1983, Civil Action for Deprivation of Rights, and related federal statutes cited herein, and supplemental jurisdiction, the jurisdiction of this case is proper.

7.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and supplemental jurisdiction under 28 U.S.C. § 1367.

8.      Venue is proper under 28 U.S.C. § 1391(b), as a substantial part of the events occurred in this District.

9.      Plaintiffs reside and operate their business in Montgomery County, Maryland.

## COMMON FACTUAL ALLEGATIONS

10.     Jonathan Bennett and his wife, Christina, are law-abiding, proud American citizens living the American dream with their stable and loving family, federally licensed firearm business, and vivacious participation in their church and community.  This life, liberty, and happiness which they so earnestly pursued was interrupted and willfully deprived by the Defendants, who intruded with unlawful accusations, harmful falsity, and the intent to restrict those rights which every American is guaranteed in the Constitution.

11.     Plaintiffs lawfully operated a federally licensed firearms business with a strong compliance record and extensive cooperation with state and federal agencies.

12.     In September 2024, Defendants initiated a civil enforcement action accusing Plaintiffs of facilitating illegal firearm trafficking.

13.     These claims were false, unsupported, and politically motivated. Plaintiffs were not given prior notice and learned of the suit through press coverage.

14.     The suit was accompanied by press releases, conferences, and national media coverage, branding Plaintiffs as criminal actors and facilitators of "gun trafficking."

15.     The allegations relied on gun sales that had been expressly authorized and cleared by Maryland State Police and ATF systems.

16.     The case was dismissed **with prejudice** on February 14, 2025, by the Montgomery County Circuit Court.

17.     Defendants have not retracted their public claims, which continue to damage Plaintiffs' business, reputation, and emotional well-being.

Docusign Envelope ID: 3AFC218D-F929-4980-82BD-DE060087D409

## BACKGROUND INFORMATION

18.     The Bennett family has been a cornerstone of the public safety community for nearly two decades. Their journey began in 2004 when Jonathan Bennett entered a career in law enforcement. Together, with his wife Christina, they believed that a life of public service was not just a career path—it was a calling that aligned with their values as a family.

19.     From the very beginning, Jonathan's dedication and performance set him apart. His drive and integrity quickly led to promotions and opportunities to serve on specialized units, ultimately placing him in the Special Operations Bureau as a K9 Handler. Throughout his career, Jonathan received numerous accolades, including being named Officer of the Year. He was also recognized by the Maryland State Highway Administration for leading the entire state in DUI enforcement for several consecutive years. His work was so impactful that multiple articles were written about his service.

20.     As he progressed, Jonathan became a respected trainer, teaching at numerous police academies such as Montgomery County, Prince George's County, Frederick City, the Northern Virginia Regional Police Academy, and the Maryland Police and Correctional Training Commission. As a firearms instructor, he helped lead his agency's firearms training program, with a particular focus on real-world decision-making and problem-solving.

21.     When Jonathan became a firearms instructor, he discovered that Maryland civilians were required to complete extensive training to meet the state's certification requirements. In 2015, while still working full-time as a law enforcement officer, Jonathan and Christina decided to start a small business to help fill that need. Christina obtained the necessary certifications, and together they launched their own firearms training company, recognized by the State of Maryland.  What began as a side business quickly gained traction.

22.     Over the next few years, their training company flourished. In 2018, a former student, working as a regional director for a large defense contracting firm returned with a life-changing opportunity: Jonathan and Christina were invited to develop training programs for armed executives. As this new branch of the business grew, they formed a second training company to keep operations distinct and compliant.

23.     In 2019, Jonathan and Christina were presented with the major opportunity of purchasing United Gun Shop in Rockville, Maryland. It was both thrilling and terrifying. After 14 years of service, Jonathan would need to take an early retirement without benefits. The couple made the difficult but determined decision to invest in the store, using a quarter of Jonathan's retirement savings—their only retirement—to take a leap of faith.  In March 2019, they officially purchased United Gun Shop. The excitement was matched only by the weight of responsibility, as they were now fully self-reliant. No more paychecks for just showing up. Their livelihood depended entirely on the business succeeding.

24.     Over the next six years, the Bennetts grew both their training company and the gun shop exponentially. When they bought the store, it employed three people. Today, it supports seven. United has become one of the most respected firearm establishments in Montgomery County, earning the trust of local and federal law enforcement alike. They modernized operations with advanced compliance technologies, hired outside consultants to ensure best practices, and remained steadfastly committed to exceeding both state and federal requirements.

25.     Jonathan's law enforcement background continues to serve the community. He regularly consults with Maryland State Police Licensing, Montgomery County's Firearms Unit, and the local ATF. These are not just professional contacts; they are personal relationships built on mutual respect.

26.     He is frequently called upon for guidance on firearm laws and compliance practices. Meanwhile, their training company has educated more than 7,000 students over the past decade, offering top-tier instruction grounded in integrity.

27.     In late 2023, Jonathan and Christina began working on their most ambitious project yet, which involved three investors and several million dollars in funding. They also began the lengthy process of applying for Small Business Administration certification as a woman- and minority-owned business—another effort to continue growing and serving their community.

28.     But in September 2024, everything changed when their years of dedication and sacrifice were suddenly cast into doubt. Without warning, they were notified by *news reporters* that a lawsuit had been filed against them by the Attorneys General of Maryland and D.C., in partnership with the advocacy group Everytown. The accusations were staggering.

29.     They watched in disbelief as they were accused by Defendants, from a national podium, of trafficking firearms and participating in illegal gun sales. Shockingly, they were blamed for 90% of all guns recovered from crime scenes in D.C.  Defendants used the legal process in order to maliciously attack and defame the Plaintiffs, painting them to the public in press releases, press conferences and in public court filings as illegal "firearm dealers" whose federally licensed businesses were "top sources of crime guns." (Re. in Opp. to MSD ¶ 1).  This shock occurred after years of over-compliance with the law, leaving the Bennetts wondering how such accusations were even possible.

30.     The Bennetts had always prided themselves in operating above and beyond the law, implementing standards that far exceeded legal requirements. Yet now, they were falsely and maliciously being portrayed by Defendants as criminals.

31.    Not only did Defendants intentionally harm Plaintiffs and the federal license that was awarded to the Plaintiffs' and their business, but they further intended to restrict and even negate Plaintiffs' Second Amendment Rights with their false attacks and accusations of gun crime.

32.    The emotional and financial toll was immediate and devastating. Investors pulled out, costing them millions. All their expansion projects were paused or canceled.

33.    The false accusations and defamation by Defendants intentionally caused severe and unwarranted stress, exhaustion, and loss of business, while also costing the Plaintiffs over $200,000 in legal fees to defend their smeared names and livelihoods.

34.    Jonathan took on the immense burden of legal preparation and discovery. Christina assumed more of the day-to-day responsibilities at the shop. They tried to shield their children from the stress, but some wounds couldn't be hidden. In February, Christina suffered a miscarriage—an unspoken weight compounded by the storm they were already enduring.

35.    Jonathan couldn't sleep. He lost his appetite and dropped nine pounds in the first month of the lawsuit. He bottled up his pain to protect his family, trying to keep the chaos of the false lawsuit by the one of most powerful people in Maryland, the Attorney General, from seeping into their home. But it was impossible to carry it all alone.

36.    This situation has also raised serious safety concerns for Jonathan. Years ago, members of Dead Man Inc. (DMI)—a gang known to operate as hired hitmen—followed Jonathan home in his marked police cruiser. Fortunately, Jonathan was alert and managed to pursue the suspect, eventually identifying the vehicle. That incident led to a much broader investigation, during which several individuals were arrested and charged for conducting surveillance on officers and their residences.  Because of this, Jonathan and Christina made a deliberate decision not to have any of the legal entities they are responsible for registered in their own names.

37.     While the company operates under a trade name separate from the legal entity, and while a registered agent (an attorney) officially represents the entity to keep ownership anonymous, Maryland, D.C., and Everytown still chose to list Jonathan's name in their initial legal filings. It wouldn't have mattered if the business had been sold prior to the filing, they linked Jonathan Bennett and his family's name with illegal gun trafficking regardless.

38.     As a result, Jonathan and Christina are constantly confronted by clients and business associates who have read the court files and assume truth in the Defendants' false claims.  But the innocence of the Bennetts and their business doesn't seem to matter anymore. Their reputation has been permanently damaged. The national headlines and political grandstanding by the attorneys general and Everytown came at the direct expense of Plaintiffs' business and good name. Nothing can undo that harm now.

39.     Since the lawsuit, store sales have plummeted. In United's first six years of business, they underwent only four annual audits. In just the past year, however, they have endured six different audits from various government regulatory entities such as the Maryland State Police, Montgomery County, and the Alcohol, Tobacco and Firearms (ATF), including never-before done audits, one lasting over nine weeks.

40.     Defendants' baseless, unlawful and malicious suit against Plaintiffs was dismissed with prejudice by the court.  Plaintiffs suffered under color of law by purposeful and powerful officers of the law – here Defendants and their agents and co-conspirators – who were acting outside of their authority and in violation of the rights of Plaintiffs and all Americans.

## COUNT I – MALICIOUS INVESTIGATION AND LITIGATION
## 42 U.S.C. § 1983

**(Violation of Plaintiffs' Fourth, Fifth and Fourteenth Amendment Rights)**

41.     Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

42.     Defendants, acting under color of law, initiated a civil enforcement action without probable cause.

43.     The lawsuit was terminated in Plaintiffs' favor with express indications it was frivolous and politically motivated.

44.     The action was malicious, politically motivated, and deprived Plaintiffs of liberty and property interests.

45.     Defendants were acting under color of law and in collaboration with Everytown Law, and was within the scope of their employment with the Office of the Attorney General, State of Maryland, and Office of the Attorney General, District of Columbia, respectively.  Pursuant to 42 U.S.C. § 1983, the conduct of the Defendants complained of by Plaintiffs included suing, defaming, and investigating, in their official and/or private capacities, while doing so without distinct statutory or common law authority, thus acting outside of the constitution and laws of Maryland and the United States.

46.     Defendants  knowingly, intentionally, and maliciously caused or continued a civil investigation against Plaintiffs ACEJ HOLDINGS, LLC by fabricating claims of illegality, unlawful conduct and misrepresentations.

47.     As a result of the malicious process, Plaintiffs were deprived of liberty in violation of the Fourth, Fifth and Fourteenth Amendments, including but not limited to: public high profile court appearances; unjustified litigation and political lawfare and weaponization of the court system

Docusign Envelope ID: 3AFC218D-F929-4980-82BD-DE060087D409

against them without any evidence of wrongdoing; the taking of private information and business records without a warrant and without due process of law; loss of property and business valuation; and additional violations of due process both substantive and procedural.

48.    Defendant's conduct also violated Plaintiffs' rights to due process by attempting to compel Jonathan Bennett to be a witness against himself, by defaming him and his legal business with false claims of gun trafficking and providing no evidence for such egregious claims; by their tortious investigations and litigation against the Plaintiffs causing emotional and financial harm as they claimed outrageous yet unspecified state and federal crimes, all while they were and are both law abiding and in full compliance with state and federal law.

49.    Defendants' conduct was further demonstrably malicious in that Defendant governments alone had access to information about licensed individuals that it permitted to continue to approve for sales, misleading Plaintiff ACEJ HOLDINGS, LLC to obey the clearances of the State of Maryland and District of Columbia which authorized all gun sales, and then attempting to use those authorizations against Plaintiffs to ruin their lives, destroy their businesses, harm their incomes and family ownership, smear their upstanding and honorable reputations, and take their businesses and close them down.  All this was done in collusion with anti-gun radical organizations which the government defendants joined in cahoots with in order to violate the law and Plaintiffs' rights.

50.    As a direct and proximate result of Defendant's unconstitutional and unlawful conduct done under color of law, Plaintiffs suffered injury, including emotional distress, reputational harm, financial losses, and deprivation of liberty, entitling Plaintiffs to compensatory damages, including economic, emotional, severe pain and suffering, and mental anguish damages, in an amount to be determined at trial.

51.    Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiffs' constitutional rights, justifying the imposition of punitive damages.

**WHEREFORE**, Plaintiffs respectfully request that this Court:

● Enter judgment in favor of Plaintiffs and against Defendant;

● Award compensatory damages;

● Award punitive damages;

● Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

● Grant such other and further relief as the Court deems just and proper.

## COUNT II – CONSPIRACY TO DENY CONSTITUTIONAL RIGHTS
## 42 U.S.C. § 1983 – SECOND, FOURTH AND FOURTEENTH AMENDMENTS

52.    Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

53.    Defendants' actions infringed upon Plaintiffs' constitutional rights, including the right to engage in lawful commerce of arms and the right to due process.

54.    Defendants used investigatory tools and litigation to chill protected conduct and destroy Plaintiffs' business without cause.

55.    Plaintiffs suffered reputational, emotional, and financial harm.

56.    At all times relevant, Defendants were acting under color of state law, in their capacities as Attorney General of the State of Maryland and the District of Columbia, and in collusion therewith, respectively.

57.    Pursuant to 42 U.S.C. § 1983, the conduct of the Defendants complained of by Plaintiffs was committed jointly and severally and in collusion together, and included suing, defaming, and investigating, in their official and/or private capacities, while doing so without distinct statutory,

common law authority, thus acting outside of the constitution and laws of Maryland and the United States.

58.    Defendants knowingly and willfully entered into an agreement and understanding to act in concert to deprive Plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to Plaintiffs' rights under the Second, Fourth, Fifth, and Fourteenth Amendments.

59.    Defendant Attorneys General colluded and conspired with Everytown Law to violate Plaintiffs' rights under color of law including, but not limited to, by positioning Everytown Law attorneys and representatives within, beside and/or on behalf of the governments of Maryland and the District of Columbia, acting with and alongside of, their official elected and appointed official government offices.

60.    Specifically, the Defendants agreed to work on behalf of and in conjunction with each other to unlawfully use the power of the State to search the business records of, obtain private records of, use police and government data regarding, and to intimidate, threaten judgment against, demand acquiescence to illegal investigations and to state and Defendants' access to private gun owner records, in violation of federal privacy laws protecting gun ownership from any list or roster or public or private database, and to unjustly and maliciously use their positions in government and legal system to collude both taxpayer money and many attorney-hours in order to file and prosecute a civil action the Plaintiffs without legal grounds, suppressing and withholding the Constitutional rights of Plaintiffs until their deceptive case was dismissed with prejudice by the court.  Defendants did all this despite knowing that such actions were unlawful and without reasonable or probable cause or any legal justification.

61.    In furtherance of this conspiracy, Defendants committed overt acts, including but not limited to:

   a. falsely reporting or fabricating information to initiate legal and/or administrative action against the Plaintiffs;

   b. executing or participating in an unlawful search or seizure of Plaintiffs' property or person and seeking to and obtaining private information via unlawful discovery and internal government information otherwise protected from their purview by federal and state law and the United States Constitution;

   c. engaging in coordinated actions to conceal the non-existence of material evidence they claimed to possess indicating violations of state and/or federal law, and to retaliate against Plaintiffs for objecting to Defendants' conspiracy to misuse the court system to obtain private gun owner data and information on Plaintiffs and on those gun owners and purchasers exercising protected liberty interests, rights of due process and specific Constitutional guarantees;

   d. communicating among themselves to ensure their actions were concealed and/or falsely justified,

   e. and other material overt acts.

62.    The conduct of Defendants was intentional, malicious, and/or carried out with reckless disregard for Plaintiffs' clearly established constitutional rights.

63.    In their unjust fabrication of claims against Plaintiffs, on information and belief Defendants conspired with domestic and/or foreign entities to deny said statutory, legal, and constitutional rights.

64.    In collusion with government competitors and in seeking a political objective foreign to the Constitution and laws of the United States, Defendants initiated a conspiracy to deny the 2nd,

4th, and 14th Amendment rights of the Plaintiffs.  By their suit against Plaintiff ACEJ HOLDINGS, LLC, Defendants succeeded in their conspiracy, restricting Plaintiffs' rights until the court dismissed their egregious claims with prejudice.

65.    As a direct and proximate result of Defendants' conspiracy and overt acts taken in furtherance thereof, Plaintiffs suffered violations of constitutional rights, including deprivation of liberty, denial of procedural due process, along with associated damages, including economic damages, emotional distress, pain and suffering, reputational harm, financial loss, and legal costs.

66.    **WHEREFORE**, Plaintiffs respectfully request that this Court:

a. Enter judgment against Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

b. Award punitive damages to deter future misconduct;

c. Award costs of this action, including reasonable attorney's fees under 42 U.S.C. § 1988;

d. Grant such other and further relief as the Court deems just and proper.


## COUNT III – DEFAMATION

67.    Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

68.    Defendants made public statements accusing Plaintiffs of unlawful gun sales, aiding trafficking, and fueling crime.

69.    These statements were false, defamatory *per se*, and made with actual malice.

70.    The defamatory statements remain online and in circulation.

71.    On or about September 3, 2024 and thereafter continuing to this day, Defendants made and are making one or more false and defamatory statements concerning Plaintiff, including but not limited to the following publications:

"THE STATE OF MARYLAND, DISTRICT OF COLUMBIA AND EVERYTOWN LAW PRESS RELEASE DATED SEPTEMBER 3, 2025

      a.  **"BALTIMORE, MD (September 3, 2024)** – Attorney General Anthony G. Brown, District of Columbia (DC) Attorney General Brian L. Schwalb, and Everytown Law today announced…" ".

**Exhibit 1, FILED UNDER SEAL, attached hereto (still published online by the Defendants as of August 25, 2025).**

THE MARYLAND COMPLAINT

      b.  That United "knowingly facilitated the illegal sale of at least thirty-four handguns to an obvious straw purchaser," Complaint, pg. 2 (Montgomery County Circuit Court Case No. C-15-cv-24-004781).

      c.  "…[United's] sales to [the Maryland licensed gun collector] bore hallmarks of…illegality…In short, there was no plausible lawful explanation for [the Maryland licensed gun collector]…handgun purchases…but [United] did not care. They kept taking his money and selling him more guns, putting the Washington, D.C. metropolitan area at risk…These illegal and improper handgun sales…had repercussions throughout the Washington, D.C. metropolitan area and have resulted in harm throughout the region…" Complaint, pg. 4 (Montgomery County Circuit Court Case No. C-15-cv-24-004781).

      d.  "…these handgun sales violated state and federal law…" Complaint, pg. 5 (Montgomery County Circuit Court Case No. C-15-cv-24-004781).

      e.  "…[United] who chose profits over safety…have to date, faced no consequences for *their* critical role in fueling gun violence in the Washington, D.C. region." Complaint, pg. 5 (Montgomery County Circuit Court Case No. C-15-cv-24-004781).

      f.  "the Attorneys General…seek to hold [United] accountable for their role in facilitating the proliferation of illegal guns in the Washington, D.C. metropolitan area and for their part in fueling its gun-violence crisis." Complaint, pg. 6 (Montgomery County Circuit Court Case No. C-15-cv-24-004781).

g. That United was making "illegal sales of firearms to obvious straw purchasers" who were "illegally disseminating firearms," who had therefore "contributed to the proliferation of crime guns and the nuisance of gun-related crime, including gun violence," in Maryland and Washington D.C. "and the metropolitan area." Oppo. to MTD, pg. 1. (Montgomery County Circuit Court Case No. C-15-cv-24-004781).

72. These statements were published or communicated to third parties, including news companies and therefore the public, without Plaintiffs' consent.

73. The statements were false, defamatory, and made with reckless indifference or negligence, malice, and the knowledge that their claims were lies, and thus were not subject to any privilege or protection.

74. Defendant knew or should have known that these statements were false, or acted with reckless disregard for their truth or falsity.

75. In fact, the actions alleged herein could have been more accurately accused of the Defendants State of Maryland and Washington, D.C. herein, not United Gun Shop, because the Defendant State of Maryland, Washington, D.C. and Attorneys General, on information and belief, permitted the licensure and purchase approval scheme for which they blame Plaintiffs herein, while willfully hiding such information from the Plaintiffs who had no such prior knowledge.

76. These statements were defamatory per se, in that they accused Plaintiffs of illegality, facilitation of crimes, inferring them knowingly being weapon trafficking facilitators, of violating state and federal law, and publicly and purposefully attacked their personal and professional integrity and Federal Firearms Licensure against their personal and constitutional rights and the public good, on which their entire livelihood depends.

77. As a direct and proximate result of these defamatory statements, Plaintiffs has suffered and continues to suffer:

a. Extreme and severe damage to reputation;

b. Emotional distress and humiliation;

c. Loss of employment or business opportunities;

d. Economic losses and legal expenses.

78. In claiming that Plaintiffs were facilitating illegal gun trafficking who saw an "obvious" straw purchaser and were therefore complicit with gun crimes, accusations which they gave no evidence nor basis for, Defendants gave and published a false statement and purported it to be a fact. Further, these lies were publicized in major media worldwide and a major suit against the Plaintiffs, as well as causing obnoxious and unreasonable investigation(s), with the purposeful intent of driving customers away from the federally licensed gun shop. Unfortunately for the Plaintiffs, their business was lessened by the outrageous claims and unlawful prosecutions of Defendants, as would-be customers were tricked into a planted fear that the Bennetts and United Gun Shop might be involved in illegal activity. The fact that their lies were dismissed with prejudice does not change the fact that such lies were intensely severe, and the consequences lingered and continue. Calling or referencing someone or their business as "illegal" and facilitating "gun trafficking" is no light claim whatsoever, was knowingly false, and requires retributive correction both in compensatory damages and punitive damages to ensure Defendants remedy and cease their actions now and in the future, as they claim to be threatening not only Plaintiffs, but all Maryland federally licensed gun stores in their press release.

79. Jonathan's decades of public service and Christina's and Jonathan's business reputation the family worked hard to build over the past six years are now all demeaned and in question, all because of a baseless headline falsely labeling Plaintiffs as gun traffickers. Defendants claimed the Bennett's and their business made illegal sales, which was knowingly false.

80.    **WHEREFORE,** Plaintiffs respectfully request that this Court:

a. Enter judgment against Defendant for compensatory damages in an amount to be determined at trial;

b. Award punitive damages for willful and malicious conduct;

c. Award costs of suit and reasonable attorney's fees;

d. Grant such other and further relief as the Court deems just and proper.

## COUNT IV – INTERFERENCE WITH SECOND AMENDMENT FIREARM RIGHTS IN VIOLATION OF PLCAA (15 U.S.C. § 7901 et seq.).

81.    Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

82.    Defendants' lawsuit attempted to impose liability for third-party criminal acts using firearms lawfully sold by Plaintiffs.

83.    This is expressly preempted by the PLCAA.

84.    The suit was filed without evidence of knowing illegality, falling outside statutory exceptions.

85.    At all relevant times, Plaintiffs engaged in lawful firearm activity, including but not limited to, legally purchasing, possessing, selling, and transporting firearms with federal license.

86.    Defendants, acting under color of state law, intentionally and unlawfully interfered with Plaintiffs' constitutional rights, including:

a.  The Second Amendment right to keep and bear arms;

b.  Fourteenth Amendment rights to due process and equal protection.

87.    Defendants' actions included, but were not limited to:

a.  Attempt at unlawful denial of purchase without cause, harassment or targeting based on firearm ownership, and an arbitrary attempt at revocation of licenses or permits, treating Plaintiffs as though they were unlicensed criminals.

88.  Defendants' conduct directly and proximately caused Plaintiffs to suffer violations of federal constitutional and statutory rights.

89.  Plaintiffs allege that such actions contravene the purposes and protections of the PLCAA, insofar as Defendants sought to burden or impose liability for lawful firearm activity, contrary to federal law, state law, and public policy.

90.  Defendants' actions of seeking to impose liability onto the Plaintiffs for harm that is caused entirely separately by others, are described in the PLCAA as "an abuse of the legal system, [eroding] public confidence in our Nation's laws, [threatening] the diminution of a basic constitutional right and civil liberty, [inviting] the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and [constituting] an unreasonable burden on interstate and foreign commerce of the United States." (15 U.S.C. § 7901, et seq., "PLCAA," sec. 2 (a)(6)).

91.  Plaintiffs seek declaratory and monetary relief for violations of PLCAA protections.


**COUNT V – INTERFERENCE WITH BUSINESS RIGHT AND CONTRACT**

92.  Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

93.  At all relevant times, Plaintiffs maintained valid and enforceable contractual relationships with customers and/or had a reasonable business expectancy with third parties.

94.     Defendants knew of these relationships and intentionally disrupted them through public allegations and legal threats.

95.     Defendants intentionally and maliciously interfered with these relationships by making false statements, pressuring third parties with these false statements to stay away from Plaintiffs, and using undue influence of their government status to propagate lies.

96.     Defendant's interference was improper and without legal justification, and it directly caused a breach of contract and/or disrupted Plaintiffs' business expectancy.

97.     As a result, Plaintiffs suffered financial loss, reputational harm, and other damages.

98.     But for Defendants actions, no harm would have been incurred by Plaintiffs.

99.     Plaintiffs suffered economic loss, damaged reputation, and canceled investor deals.

100.     **WHEREFORE,** Plaintiffs respectfully request that the Court:

a. Enter judgment against Defendant for compensatory damages;

b. Award punitive damages for willful and malicious conduct;

c. Award costs of suit and attorney's fees;

d. Grant such other and further relief as the Court deems just and proper.

### COUNT VI – VIOLATION OF MARYLAND DECLARATION OF RIGHTS
### Due Process Violations and Abuse of Process

101.     Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

102.    At all times relevant to this Complaint, Defendants Anthony Brown and Brian Schwalb were acting under color of Maryland law, in their capacities as Attorney Generals of the State of Maryland and the District of Columbia respectively.

103.    The Maryland Declaration of Rights guarantees certain rights to all individuals within the State of Maryland, including:

- Under **Article 2**, upholding of the United States Constitution;

- Under **Article 5**, historic common law protections including property and civil rights;

- Under **Article 24**, the right to due process of law and protection from arbitrary governmental action;

- Under **Article 26**, the right to be free from unreasonable searches and seizures of their person and property.

104.    Defendants, acting individually and in concert, violated Plaintiffs' rights under the Maryland Declaration of Rights by:

a. Abusing the legal system, bringing false claims without evidence and treating Plaintiffs as criminals in a civil court and before the world in false press releases and filings in court unsupported by any evidence;

b. Executing an unreasonable search and investigation on false accusations that Plaintiffs' business was a criminal trafficking organization;

c. Further abusing Plaintiffs' rights of due process in treating them as if guilty until proven innocent by making assertions in pleadings and in press releases that falsely claimed and inferred criminal wrongdoing by Plaintiffs, in violation of Plaintiffs' fundamental liberty interests and guarantees of due process.

105.    These actions were taken without lawful justification, were objectively unreasonable, and were carried out with malice, bad faith, and/or reckless disregard for Plaintiffs' rights.

106.    The actions of Defendants included, but were not limited to, violations of Articles 2 (violation of the U.S. Constitution), 5 (Common Law protections), 24 (Due Process), 26 (unreasonable search/seizure).

107.    As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered violations of their constitutional rights under Maryland law, as well as economic damages, emotional distress, pain and suffering, reputational harm, loss of liberty, and other damages.

108.    **WHEREFORE**, Plaintiffs respectfully request that this Court:

a. Enter judgment in favor of Plaintiffs and against Defendants for violations of the Maryland Declaration of Rights;

b. Award compensatory damages in an amount to be determined at trial;

c. Award punitive damages as permitted by Maryland law for malicious and reckless conduct;

d. Award attorney's fees and costs as permitted;

e. Grant any such other and further relief as the Court deems just and proper.

## COUNT VII – FALSE LIGHT INVASION OF PRIVACY

109.    Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

110.    On or about September 3, 2024 and ongoing to this day, Defendants publicized information about Plaintiffs through their major, public lawsuit, accompanied by news releases.

111.    This information presented Plaintiffs in a false and misleading light by falsely painting the Plaintiffs as crooked, associating them with criminal activity and firearm trafficking.

112.    The portrayal was highly offensive to a reasonable person, planting and suggesting facts or implications about Plaintiffs that were false, misleading, or damaging, and intensely severe.

113.    Defendants made the statements or representations with actual malice, knowledge of their falsity, and a reckless disregard for the truth.

114.    As a result, Plaintiffs suffered mental anguish, humiliation, emotional distress, reputational harm and loss of business.

115.    **WHEREFORE,** Plaintiffs respectfully requests this Court to:

        a. Enter judgment against Defendant for compensatory damages;

        b. Award punitive damages due to willful and malicious conduct;

        c. Award the costs of this action and reasonable attorney's fees, if applicable;

        d. Grant such other and further relief as the Court deems just and proper.

## COUNT VIII – FEDERAL CIVIL RICO VIOLATIONS (18 U.S.C. § 1962(c), (d))

116.    Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

117.    Defendants Anthony Brown and Brian Schwalb, along with others including Everytown Law, acting individually and in concert, were associated with an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in and affecting interstate commerce.

118.    The enterprise consisted of the government systems of the State of Maryland and the District of Columbia, and third parties such as Everytown Law, with an ongoing structure, decision-making process, and continuity.

119.    Defendants participated in the conduct of the affairs of the enterprise, directly and indirectly, through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

120.    The racketeering activity consisted of multiple related predicate acts including, but not limited                                                                                                                                         to:

a. **Wire fraud** (18 U.S.C. § 1343): false press statements and public misrepresentations; causing or knowingly permitting, without subsequent notice of rescission, the sending through the wires of fraudulent communications to Plaintiff ACEJ HOLDINGS, LLC including, but not limited to, authorizing multiple gun sales of a collector's licensure suspect they knew or should have known they were believing was a prohibited person from their internal investigations and information only the Defendant State and District and Attorneys' General had access to, and verifications of approvals for purchases of firearms that they later alleged were "straw purchases" for the said authorized licensee, and for which they subsequently used against Plaintiffs to sue, extort, demand settlement from, sought "monetary damages", and to "force" United to comply with Defendants' political attack and anti-Constitutional vendetta against itself as a small gun store;

b. **Extortion** (18 U.S.C. § 1951): pressuring Plaintiffs to alter lawful business conduct under threat of litigation and false public statements; inferring threats of incrimination by falsely

claiming Plaintiffs were involved in illegal and/or criminal activity such as gun trafficking and straw purchases, demanding and seeking to coerce the rescinding of Constitutional rights through coercion for government "monitoring" of Constitutionally protected gun sales and purchases, and threatening fines or similar action for the false accusations of violation of federal and state law;

d.  On information and belief using the wires and mails in asserting and claiming powers of government office in its communications to third parties all in deprivation of the rights of Plaintiffs, through false statements, threats, coercions, and demands, that injured and destroyed the reputations of Plaintiffs, harmed their businesses, threatened their liberty, and all which were ultra vires and in violation of federal law.

121.    These acts occurred over a period of months, including specific dates from late August 2024 through and ongoing to this day, and were not isolated events but part of an ongoing scheme to deny and deprive the property and rights of Plaintiffs engaging in and affecting Commerce.

122.    The pattern of racketeering activity included at least two predicate acts within a ten-year period and demonstrated both continuity and relationship among the acts, misusing the wires and mails to falsely communicate approvals of gun sales only to then falsely communicate threats and coercions to attempt to take unlawful control of and interest and oversight of Plaintiffs' business, affecting their engaging in interstate commerce.

123.    As a direct and proximate result of the Defendants' racketeering activities, Plaintiffs have been injured in business or property, including but not limited to:

a.  The loss of business and revenue, as the lies deterred customers and took Plaintiffs away from their legal business to defend their smeared name;

b.  Loss of over $200,000 in legal fees, caused by coercion and falsities communicated in the racketeering scheme of Defendants against Plaintiffs.

124.    Pursuant to 18 U.S. Code § 1961-64, Plaintiffs are entitled to compensation for damages caused by the Racketeer-influenced, corrupt obstruction of justice brought by the Defendants.

125.    Plaintiffs are further entitled to recover treble damages, costs, and reasonable attorney's fees under 18 U.S.C. § 1964(c).

126.    **WHEREFORE,** Plaintiffs respectfully request that this Court:

a. Enter judgment in favor of Plaintiffs and against Defendants for compensatory damages and threefold of the damages sustained, as provided by 18 U.S.C. § 1964(c);

b. Award costs of this suit and reasonable attorney's fees;

c. Grant any further relief the Court deems just and proper.

## COUNT IX – INVASION OF PRIVACY

127.    Plaintiffs repeat, re-allege and incorporate herein all allegations, facts and matters set forth in this action.

### Section 1 - Intrusion Upon Seclusion

128.    Defendant intentionally intruded into Plaintiffs' private affairs by accusing and investigating the private, legal sales of Plaintiffs without consent or legal justification.

129.    Plaintiffs had a reasonable expectation of privacy in the matters intruded upon.

130.    The intrusion was highly offensive to a reasonable person and caused Plaintiffs mental anguish and emotional distress.

### Section 2 - Public Disclosure of Private Facts

131.    Defendant publicly disclosed private and non-newsworthy information about Plaintiffs, including but not limited to private sales, financial details, and fabricated information designed to incriminate Plaintiffs or place them in a false light of "illegality" and deceive the public.

132.    These facts, since they were lies which used private sale information, were not of legitimate public concern and would be highly offensive to a reasonable person, particularly since federal law mandates the privacy of all such transactions.

133.    As a direct and proximate result of Defendant's actions, Plaintiffs have suffered emotional distress, reputational harm, and other damages.

134.    Similar to but independent of the cause of action for unreasonable searches and seizures, pursuant to 42 U.S.C. § 1983 and the Fourth Amendment, Defendants intruded upon the seclusion of Plaintiffs, investigating and disclosing in a false light the legal records and data of the firearm dealership without any probable cause nor evidence of any wrongdoing.  Like a break-in without a warrant, the Defendants' intrusion was baseless and violated Plaintiffs' reasonable expectation of privacy that their business, client information and privacy would not be intruded upon nor their names smeared without judicial due process of law.

135.    **WHEREFORE,** Plaintiffs respectfully requests that this Court:

a. Enter judgment against Defendants for false light intrusion of Plaintiffs' seclusion, and for public disclosure of private facts, and

b. Award Plaintiffs compensatory damages against Defendants in an amount to be determined at trial;

c. Award punitive damages for willful and malicious conduct;

d. Award costs of suit and reasonable attorney's fees;

e. Grant such other and further relief as the Court deems just and proper.

## CONCLUSION

**WHEREFORE**, the Plaintiffs JONATHAN BENNETT, his wife CHRISTINA

BENNETT, and their business ACEJ HOLDINGS D/B/A UNITED GUN SHOP, request

judgment in their favor on all counts.

I HEREBY SOLEMNLY AFFIRM, UNDER PENALTY OF PERJURY, THE FOREGOING
FACTS AND MATTERS TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND
BELIEF.

JONATHAN BENNETT

CHRISTINA BENNETT

Respectfully Submitted,
JONATHAN BENNETT
and
CHRISTINA BENNETT
And
ACEJ Holdings, LLC, d/b/a
United Gun Shop

/s/_____

By: Daniel L. Cox
THE COX LAW CENTER, LLC
P.O. Box 545
Emmitsburg, MD 21727
P: 410-254-7000
Fax: (410) 254-7220
dcox@coxlawcenter.com
Attorneys for the Plaintiffs
Fed Bar No. 28245