**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JONATHAN BENNETT, *et al.*

    *Plaintiffs,*

    v.

ANTHONY BROWN, *et al.*
    *Defendants*.

Civil Action No. 25-cv-2868-ELH

**MEMORANDUM**

This Memorandum addresses a motion to seal a press release submitted as an exhibit with the Complaint. *See* ECF 1-2; ECF 2-2 (the "Press Release").

Plaintiffs Jonathan Bennett, Christina Bennett, and ACEJ Holdings, LLC, d/b/a United Gun Shop ("United"), have filed suit against multiple defendants: Anthony Brown, Attorney General of Maryland; Brian Schwalb, Attorney General of the District of Columbia; Everytown Law; the State of Maryland; and the District of Columbia. ECF 1 ("Complaint"); ECF 35 (the "Amended Complaint"). Brown and Schwalb have been sued in their personal and official capacities.

The Bennetts, a married couple, own United, a federally licensed firearm business. ECF 35, ¶¶ 11, 32. The case is rooted in a civil enforcement action filed by defendants in the Circuit Court for Montgomery County, Maryland against plaintiffs and two other gun shops, accusing them of facilitating illegal firearm trafficking. *See State v. Engage Armament LLC*, C-15-CV-24-4781 ("Engage Case"); *see also* ECF 35, ¶ 14. The allegations concerned, *inter alia*, plaintiffs' business transactions between 2020 and 2024 with an individual later convicted in federal court for "engaging in the business of dealing firearms without a license." ECF 35, ¶ 17; *see also id.* ¶¶ 16–20. On February 14, 2025, the Circuit Court for Montgomery County dismissed the Engage

Case, with prejudice. *Id.* ¶ 25.[1]  This suit followed on August 30, 2025.  ECF 1.[2]  The Amended

Complaint (ECF 35), filed on March 3, 2026, is the operative pleading.

In the proverbial "kitchen sink" approach, the Amended Complaint (ECF 35) contains nine

counts.[3]  Plaintiffs assert two claims pursuant to 42 U.S.C. § 1983:  "Malicious Investigation and

Litigation," in violation of plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments

to the Constitution (Count I), and "Conspiracy To Deny Constitutional Rights," in violation of the

Second, Fourth, and Fourteenth Amendments to the Constitution (Count II).  Count III asserts a

claim of Defamation, based in part on the Press Release.  Count IV alleges "Interference with

Second Amendment Firearm Rights in Violation of PLCAA," *i.e.*, the Protection of Lawful

Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901, *et seq.*  Count V is titled "Interference

with Business Right and Contract."  Count VI asserts "Violation of Maryland Declaration of

Rights," *i.e.*, "Due Process Violations and Abuse of Process" pursuant to Articles 2, 5, 24, and 26

of the Maryland Declaration of Rights.  Count VII alleges "False Light Invasion of Privacy."  In

Count VIII, plaintiffs lodge a claim for "Federal Civil Rico Violations" ("RICO"), pursuant to 18

U.S.C. § 1962(c), (d).  Count IX asserts a claim for "Invasion of Privacy."

---

[1] Defendants have appealed the dismissal, which is pending.  *State of Maryland, et al. v. Engage Armament LLC, et al.,* ACM-REG-0787-2025 (Md. App. Ct.).

[2] Defendants moved to dismiss the Complaint.  ECF 24.  Although plaintiffs opposed the motion (ECF 30), they also moved to amend their complaint.  ECF 33.  By Order of March 3, 2026, I granted the motion to amend and denied defendants' motion to dismiss, as moot.  ECF 34.

[3] The Amended Complaint is a quintessential example of shotgun pleading.  Indeed, it seems as if counsel rifled through a hornbook and selected every conceivable claim.  Such pleadings impose undue burdens on litigants and the judiciary.  *See, e.g.,  Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008) (cataloging the negative consequences of shotgun pleading), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The Press Release was issued by Maryland Attorney General Anthony G. Brown on September 3, 2024, and joined by Schwalb and Everytown Law. ECF 1-2; ECF 2-2. It announced the initiation of the Engage Case. *Id.* According to the Press Release, United and two other gun shops "ignored clear warning signs" that they were facilitating the illegal trafficking of firearms by selling firearms to "a straw purchaser." *Id.* at 2. The Press Release also claimed that the gun shops played a "role in fueling gun violence across the region." *Id.* Moreover, the Press Release asserts that the Engage Case constitutes a "'warning to other [gun] dealers who put public safety at risk to make a profit[.]'" *Id.*

The Press Release was included as an exhibit to the Complaint, and was filed under seal. *See* ECF 1-2. Plaintiffs also filed a motion to seal the Press Release (ECF 2), as well as a supporting memorandum. ECF 2-1. I shall refer to ECF 2 and ECF 2-1 collectively as the "Motion." The Press Release is appended as an exhibit to the Motion, and was again filed under seal. *See* ECF 2-2. However, the Press Release is not appended as an exhibit to the Amended Complaint (ECF 35), nor expressly incorporated therein. But, it is referenced in ECF 35. *See id.* ¶ 83.

In my view, the Motion is not moot, despite the fact that it was filed in connection with the Complaint, and the Complaint has been superseded by the Amended Complaint. This is because the Press Release remains under seal, pending a resolution of the Motion.

In the Motion, plaintiffs ask this Court either to seal the Press Release in its entirety or allow plaintiffs to file a redacted version. ECF 2-1 at 1. Defendants have not responded to the Motion, and the time to do so has expired. *See* Local Rule 105.2(a).

No hearing is required. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.    Legal Standard

It is well settled that the public enjoys a "qualified right of access" to judicial documents filed in court proceedings.  *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014).  The right of public access "serves the public's interest in monitoring court functions and promotes public trust in the judiciary."  *United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020); *see Gray Media Grp., Inc. v. Loveridge*, 155 F.4th 330, 334 (4th Cir. 2025) ("This qualified right promotes both the public interest and the integrity of the judicial process.").

"The right of public access [to judicial records and documents] derives from two independent sources: the First Amendment and the common law." *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (citing *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)); *see Doe*, 962 F.3d at 145. "Because there are two sources, the right protected by each varies." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024).

"For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record.'" *In re Application*, 707 F.3d at 290. "[D]ocuments filed with [a] court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." *Id.*  For example, a document that is "'filed with the objective of obtaining judicial action or relief'" is a judicial record.  *Oberg,* 105 F.4th at 171 (quoting *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 291 (4th Cir. 2013)).

Under the common law, the public and the press are presumed to have a qualified right to inspect all judicial records and documents.  *Pub. Citizen*, 749 F.3d at 265; *Wash. Post*, 386 F.3d at 575; *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980)

("[H]istorically both civil and criminal trials have been presumptively open.").  The common law "presumptive right of access can be rebutted only by showing that countervailing interests heavily outweigh the public interests in access."  *Gray Media Grp.*, 155 F.4th at 339 (quotation marks and citations omitted) (cleaned up); *see Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *accord In re Knight*, 743 F.2d 231, 235 (4th Cir. 1984); *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 376 (4th Cir. 2021).

Therefore, "[a]t common law, a district judge must weigh the competing interests of the public's access to judicial proceedings and the interests of the individuals *in keeping the information private* and of the government in ensuring integrity in its processes."  *Gonzalez*, 985 F.3d at 376 (emphasis added) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978)); *see also United States v. Harris*, 890 F.3d 480, 491–92 (4th Cir. 2018)).  "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; *and whether the public has already had access to the information contained in the records*.'"  *Wash. Post*, 386 F.3d at 575 (emphasis added) (quoting *In re Knight*, 743 F.2d at 235); *see Gonzalez*, 985 F.3d at 376.

"Ultimately, under the common law the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court . . . .'"  *Wash. Post*, 386 F.3d at 575 (quoting *Nixon*, 435 U.S. at 598–99) (alteration in *Wash. Post*).  The Fourth Circuit "therefore review[s] a

district court's decision concerning common law access for abuse of discretion." *Wash. Post*, 386 F.3d at 575.

The common law right of access is complemented by a "more rigorous" right of access under the First Amendment, which applies to a narrower class of documents, but is more demanding of public disclosure. *Rushford*, 846 F.2d at 253. "In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Wash. Post*, 386 F.3d at 575 (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). In *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986), the Fourth Circuit "h[e]ld that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearings themselves." And, in *Rushford*, 846 F.2d at 253, the Court concluded "that the more rigorous First Amendment standard . . . also appl[ies] to documents filed in connection with a summary judgment motion in a civil case." [4]   Of relevance, the "First Amendment right of access" also applies "to newly filed civil complaints." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021).

Although the "public's right to access documents under the First Amendment is narrower in scope" than the public's right under the common law, it is "stronger in force." *Doe*, 962 F.3d at 145. Even when the First Amendment right of access applies, however, "[t]he mere existence of"

---

[4] In an unpublished opinion, *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296 (table), 1995 WL 541623, at *3 (4th Cir. 1995) (per curiam), the Fourth Circuit "conclude[d] that the First Amendment guarantee of access should not," in general, "extend[] to documents filed in connection with a motion to dismiss." This is because "the court can rule on the motion without considering the materials," and therefore they "do not play any role in the adjudicative process." *Id*. Thus, the Court found "that the documents essentially retain their status as discovery materials and therefore are not subject to the First Amendment guarantee of access." *Id*.

such a right "does not entitle the press and public to access in every case." *In re Wash. Post*, 807 F.2d at 390; *see also ACLU v. Holder*, 673 F.3d 245, 252 (2011).

The First Amendment's application turns on "two factors: historical tradition and the function of public access in serving important public purposes." *In re Wash. Post*, 807 F.2d at 389; *see also Doe*, 962 F. 3d at 146. This is commonly known as the "experience and logic" test. *See Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 9 (1986). The first factor, historical tradition, asks whether the document or proceeding in question was traditionally open to the public. *In re Wash. Post*, 807 F.2d at 389. The second factor asks whether public access would curb "prosecutorial or judicial misconduct" and further "the public's interest in understanding the criminal justice system." *Id.*

A "sealing involving judicial records and documents can be accomplished without violating First Amendment rights only if (1) [sealing] serves a compelling interest; (2) there is a substantial probability that, in the absence of [sealing], that compelling interest would be harmed; and (3) there are no alternatives to [sealing] that would adequately protect that compelling interest." *Gonzalez*, 985 F.3d at 376–77 (citations and internal quotation marks omitted); *see also In re Application*, 707 F.3d at 290; *Stone*, 855 F.2d at 180 (citing *Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 464 U.S. 501, 510 (1984)). The Fourth Circuit "review[s] a district court's decision concerning access under the First Amendment de novo." *Wash. Post*, 386 F.3d at 575 (citing *In re State-Record Co., Inc.*, 917 F.2d 124, 127 (4th Cir. 1990)).

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Wash. Post*, 386 F.3d at 576. "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because '[o]nly then can it accurately weigh the competing interests at

stake.'" *Id.* (quoting *Stone*, 855 F.2d at 181). And, as to procedure, "the district court must (1) give the public adequate notice of a request to seal and a reasonable opportunity to challenge it, (2) consider less drastic alternatives to sealing, and (3) if it decides to seal, state the reasons, supported by specific findings, behind its decision and the reasons for rejecting alternatives to sealing." *Gonzalez*, 985 F.3d at 376 (citing *In re Knight*, 743 F.2d at 235; *see also Wash. Post*, 386 F.3d at 576.

## II.    Discussion

### A.

Plaintiffs ask this Court to seal "a press release issued by Defendants that contains statements Plaintiffs allege are false and defamatory." ECF 2-1 at 1. As noted, the Press Release was issued on September 3, 2024. ECF 2-2 at 2. The Court has not been provided with any information as to how the Press Release was disseminated. Presumably, however, it was distributed to news organizations. *See, e.g.,* Tara Lynch, *Maryland, D.C. attorneys general sue gun shops for facilitating illegal gun trafficking*, CBS NEWS (Sept. 3, 2024), https://perma.cc/H3EA-BJTE. Moreover, the Press Release remains available online and is therefore readily accessible to the public. *See Attorney General Brown Sues Three Maryland Gun Stores for Facilitating Illegal Gun Trafficking into District*, ANTHONY G. BROWN, MARYLAND ATTORNEY GENERAL (Sept. 3, 2024) (last accessed March 18, 2026), https://perma.cc/EA7R-CD6J.

As stated, the Press Release announces the initiation of the Engage Case. ECF 2-2 at 2. It describes the Engage Case as "a lawsuit against three federally licensed gun dealers for illegally selling dozens of firearms to a straw purchaser who then trafficked the weapons, mainly into DC." *Id.* The gun dealers are identified as United; Engage Armament, LLC ("Engage"); and Atlantic Guns, Inc. ("Atlantic"). According to the Press Release, all three gun dealers "ignored clear

8

warning signs that [an individual] was engaging in illegal straw purchases–buying firearms with the intent of transferring them to individuals not legally entitled to possess them–by selling [to the individual] 34 semiautomatic pistols over a 7-month period, in violation of state and federal laws." *Id.*[5]    The Press Release also ties gun sales by United, Engage, and Atlantic to gun violence in Maryland and Washington, D.C.  *Id.* at 2–3.  In addition, the Press Release states, *id.* at 3:  "Today we are holding these firearms dealers . . . accountable for their clear negligence, blatant disregard to the law, and pain they have inflicted . . . ."  It explains that the Engage Case seeks "to force the three defendant gun stores to stop engaging in illegal straw sales, in addition to monetary damages for the harm inflicted by their illegal conduct" and includes a hyperlink to the Engage Case complaint.  *Id.* at 3–4.

Plaintiffs recognize that "the document is publicly available."  ECF 2-1 at 1.  But, they contend that "filing it unredacted on the Court's docket would compound reputational harm and prejudice to Plaintiffs."  *Id.*  In their view, "sealing" the Press Release "is consistent with the governing standards because the requested relief . . . seeks to prevent unnecessary dissemination of harmful material, and protects the integrity of the judicial process."  *Id.* at 1–2.  Plaintiffs also maintain that the Motion is narrowly tailored.  *Id.*  They explain that they "seek to seal only one exhibit . . . without restricting access to the Complaint or any other filings."  *Id.*  According to

---

[5] The Press Release defines a straw sale as follows: "A straw sale occurs when a federal firearms licensee (FFL) sells a firearm to a buyer (the straw purchaser), who is in fact purchasing the gun for a third party, the true buyer, who is often prohibited from legally purchasing a gun on their own.  These unlawful transactions allow the true buyer to obtain firearms without having to present identification or undergo a background check and allow the dealer to profit from a sale which it could not otherwise have legally made."  ECF 2-2 at 3.

plaintiffs, this "ensures that the public maintains access to nearly all aspects of the litigation." *Id.* at 3.[6]

According to plaintiffs, they have a compelling interest in sealing the Press Release because it "contains statements that Plaintiffs allege are knowingly false and defamatory, accusing them of serious criminal conduct." *Id.* at 2. Plaintiffs posit that allowing the Press Release to be publicly available "on the Court's docket would further disseminate those allegations[.]" *Id.* at 3.

Alternatively, plaintiffs propose the redaction of the Press Release. *Id.* In their view, this alternative "is consistent with Fourth Circuit precedent requiring courts to consider less restrictive means before sealing." *Id.* (citing *In re Knight,* 743 F.2d at 235). However, plaintiffs do not specify what portions of the Press Release they seek to redact.

In *Fisher v. Pennsylvania Nat'l Mut. Cas. Ins. Co*., JKB-24-01135, 2025 WL 1907001, at *1 (D. Md. July 10, 2025), the court said: "'If a party wishes to seek redactions of a document or documents that will be filed with the court, the party shall 1) file, under seal, a complete, unredacted version of the document or documents to be redacted, 2) file a motion to seal the document or documents, and 3) file a redacted version of the document or documents that may be made publicly viewable on the docket.'" (quoting *G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, JKB-22-2636, 2023 WL 6130672, at *3 (D. Md. Sept. 19, 2023)). Plaintiffs have satisfied the first two instructions. But, they have not submitted a proposed redacted version of the Press Release.

The Press Release pertains to plaintiffs' defamation claim (Count III). Count III is based "solely [on] statements made in the Press Release of September 3, 2024, and subsequent public statements by Defendants." ECF 35, ¶ 79. Plaintiffs allege that the statements by defendants,

---

[6] Plaintiffs claim that they seek to seal only one exhibit to the suit. But, that is also their only exhibit.

including those in the Press Release, "were false, defamatory per se, and made with actual malice."

*Id.* ¶ 81.  Of import, plaintiffs acknowledge that these allegedly "defamatory statements remain online and in circulation."  *Id.* ¶ 82.

In particular, in the Amended Complaint, plaintiffs allege, in part, that the following statements are defamatory, *id.* ¶ 83 (alterations in ECF 35):

Exhibit 1, FILED UNDER SEAL, attached hereto[7] (still published online by the Defendants as of August 25, 2025).

a. That United "knowingly facilitated the illegal sale of at least thirty-four handguns to an obvious straw purchaser." Complaint, pg. 2 (Montgomery County Circuit Court Case [Engage Case] No. C-5-cv-24-004781). This statement was presented as an established fact without any qualification, and inherently false because each sale was approved by the Maryland State Police.

b. " . . . [United's] sales to [the Maryland licensed gun collector] bore hallmarks of . . . illegality . . . In short, there was no plausible lawful explanation for [the Maryland licensed gun collector]…handgun purchases…but [United] did not care. They kept taking his money and selling him more guns, putting the Washington, D.C. metropolitan area at risk…These illegal and improper handgun sales . . . had repercussions throughout the Washington, D.C. metropolitan area and have resulted in harm throughout the region . . ." Complaint, pg. 4 (Montgomery County Circuit Court Case No. C-15-cv-24-004781). This was an unqualified assertion of causation of criminal harm, and inherently false, as no finding of illegality was ever made, and the case was dismissed with prejudice.

c. " . . . [United] who chose profits over safety…have to date, faced no consequences for their critical role in fueling gun violence in the Washington, D.C. region." Complaint, pg. 5 (Montgomery County Circuit Court Case No. C-15-cv-24-004781). This is a statement of motive presented as fact, but it is false and defamation per se.

d. "The Attorneys General . . . seek to hold [United] accountable for their role in facilitating the proliferation of illegal guns in the Washington, D.C. metropolitan area and for their part in fueling its gun-violence crisis." Complaint, pg. 6 (Montgomery County Circuit Court Case No. C-15-cv-24-004781). This is an unqualified assertion of fact that United caused gun violence, which is false, and defamation per se.

---

[7] Exhibit 1 is the Press Release.  But, as noted, it was not "attached hereto" with the Amended Complaint.

e. " . . . these handgun sales violated state and federal law . . ." Complaint, pg. 5 (Montgomery County Circuit Court Case No. C-15-cv-24-004781). This is a fundamentally false statement made to cause harm to Plaintiffs and their business.

Further, plaintiffs allege: "Defendants gave and published a false statement and purported it to be a fact.  Further, these lies were publicized in major media worldwide and a major suit against the Plaintiffs, as well as causing obnoxious and unreasonable investigation(s), with the purposeful intent of driving customers away from the federally licensed gun shop." *Id.* ¶ 89.

**B.**

A complaint and its exhibits "are considered 'judicial documents' and are subject to the stringent First Amendment standard and its 'highest presumption of access.'" *Entri LLC v. Godaddy.com LLC*, WEF-24-569, 2025 WL 3050007, at *1 (E.D. Va. Feb. 14, 2025) (quoting *42West LLC v. Gould*, OTW-21-1581, 2024 WL 4263235, at *1 (S.D.N.Y. Sept. 20, 2024)); *see Oberg*, 105 F.4th at 171.  "Regardless of the basis for the right of public access—the First Amendment or the common law—this right may be abrogated only in unusual circumstances." *Gray Media Grp.*, 155 F.4th at 339 (internal citations and quotation marks omitted) (cleaned up). No such circumstance exists here.

As already stated, the Press Release remains publicly available, and it led to news stories when it was released.  In other words, the public has already had access to the content of the Press Release, and continues to have access.  The dissemination of the Press Release undercuts the claim that there is a compelling interest in sealing it.  Sealing will not serve the goal of keeping the Press Release "private." *See Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 303 (D. Md. 2024) ("[T]he existing publicity regarding the nature of the allegations and other identifying details moots any need to redact or otherwise restrict anything in the filings beyond [plaintiff's] name and address.").

Nevertheless, plaintiffs maintain that allowing the document to be available on the Court's docket "would further disseminate" the false allegations in the Press Release "under the imprimatur of the judicial process." ECF 2-1 at 3. The fact that the Press Release is an exhibit to a case on the docket hardly amounts to "the imprimatur of the judicial process." Moreover, the Press Release does not contain sensitive or personally identifying information regarding individual plaintiffs. And, "embarrassment, by itself, is generally insufficient to justify secrecy." *Price v. Tuggle*, JTC-16-1529, 2016 WL 4098547, at *2 (S.D.W. Va. July 28, 2016); *see Monsanto Co. v. E.I. DuPont De Nemours & Co.*, ERW-09-686, 2012 WL 5830580, at *7 (E.D. Mo. Nov. 16, 2012) ("[P]ossible embarrassment or discomfort is not enough to justify sealing court records").

### III.    Conclusion

Plaintiffs initiated a law suit that includes a claim of defamation based, in part, on the Press Release. Yet, they now seek to shroud the Press Release in secrecy, despite the fact that they rely on it to establish defendants' liability. Plaintiffs cannot use the Press Release both as a sword and a shield.

Moreover, it is difficult to ignore the reality that the public has already had access to the Press Release and will continue to have access to it, whether or not it is sealed by the Court. Therefore, plaintiffs have not provided a compelling interest to justify sealing or redacting it. *See Washington Post*, 386 F.3d at 575 (recognizing as a factor in the common law balancing test whether the public has already had access to the information).

For the foregoing reasons, I shall deny the Motion (ECF 2). An Order follows.


Date:   March 27, 2026                                      /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge

13