UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JONATHAN BENNETT, CHRISTINA BENNETT, ACEJ HOLDINGS, LLC, D/B/A UNITED GUN SHOP,

Plaintiffs,

v.

ANTHONY BROWN, in his individual capacity and official capacity as ATTORNEY GENERAL OF THE STATE OF MARYLAND,

-AND-

BRIAN SCHWALB, in his individual capacity and official capacity as ATTORNEY GENERAL OF THE DISTRICT OF COLUMBIA,

-AND-

THE STATE OF MARYLAND,

-AND-

THE DISTRICT OF COLUMBIA,

-AND-

EVERYTOWN LAW,

Defendants.

CIVIL ACTION No. 1:25-cv-02868-ELH

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. ABSOLUTE IMMUNITY BARS PLAINTIFFS' AMENDED COMPLAINT. .......... 2

II. QUALIFIED IMMUNITY ALSO BARS PLAINTIFFS' CLAIMS. .......... 4

III. STATE SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS AGAINST MARYLAND. .......... 6

IV. THE MTCA BARS STATE LAW CLAIMS AGAINST ATTORNEY GENERAL BROWN. .......... 7

V. PLAINTIFFS CONCEDE NEARLY ALL CLAIMS AGAINST ATTORNEY GENERAL SCHWALB AND THE DISTRICT. .......... 9

VI. THE FAIR REPORTING PRIVILEGE PROTECTS THE PRESS RELEASE. .......... 9

VII. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1983. .......... 11

A. Plaintiffs Fail To State a Claim for Malicious Prosecution or a Violation of Substantive Due Process. .......... 11

B. Plaintiffs Fail To State a Section 1983 Conspiracy Claim. .......... 14

VIII. PLAINTIFFS FAIL TO STATE A CLAIM FOR DEFAMATION. .......... 14

IX. PLAINTIFFS FAIL TO STATE ANY PRIVACY CLAIM. .......... 16

A. Plaintiffs' False Light Claim Rises and Falls with Their Defamation Claim. .......... 16

B. Plaintiffs' Intrusion Upon Seclusion Claim Fails. .......... 17

C. Plaintiffs' Public Disclosure of Private Facts Claim Also Fails. .......... 18

X. PLAINTIFFS DECLINE TO DEFEND THEIR PURPORTED PLCAA CLAIM. .......... 18

XI. PLAINTIFFS FAIL TO STATE A CLAIM FOR INTERFERENCE WITH BUSINESS CONTRACTS OR RELATIONSHIPS. .......... 19

XII. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MARYLAND DECLARATION OF RIGHTS. .......... 21

XIII. PLAINTIFFS FAIL TO STATE A RICO CLAIM. .......... 22

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

## CASES

*1000 Friends of Md. v. Ehrlich*,
907 A.2d 865 (Md. Ct. Spec. App. 2006) ....................3

*AARP v. Am. Fam. Prepaid Legal Corp.*,
604 F. Supp. 2d 785 (M.D.N.C. 2009) ....................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................14

*Atkinson v. Godfrey*,
100 F.4th 498 (4th Cir. 2024) ....................4

*Ayres v. Ocwen Loan Servicing, LLC*,
129 F. Supp. 3d 249 (D. Md. 2015)....................15

*Blaustein & Reich, Inc. v. Buckles*,
365 F.3d 281 (4th Cir. 2004) ....................13

*Brady v. Maryland*,
373 U.S. 83 (1983)....................4, 5

*Brass Metal Prods., Inc. v. E-J Enters., Inc.*,
984 A.2d 361 (Md. Ct. Spec. App. 2009)....................20

*Butts v. Prince William Cnty. Sch. Bd.*,
844 F.3d 424 (4th Cir. 2016) ....................10

*Campos v. Headlights, Inc.*,
2023 WL 12239452 (E.D.N.C. Aug. 29, 2023)....................7

*Carter v. Burch*,
34 F.3d 257 (4th Cir. 1994) ....................3

*Charles v. Charles*,
336 A.3d 728 (Md. App. Ct. 2025), *cert. denied*, 345 A.3d 591 (Md. 2025)....................22

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011)....................8

*Consumer Prot. Div. Off. of Atty. Gen. v. Consumer Pub'l. Co.,*
501 A.2d 48 (Md. 1985) ....................11

*Coomes v. Moran*,
2025 WL 2106739 (D. Md. July 28, 2025)....................4, 9

*deWet v. Rollyson*,
157 F.4th 344 (4th Cir. 2025) ....................5

*Dwyer v. Nay*,
2026 WL 632546 (Md. App. Ct. Mar. 6, 2026)....................6

*English v. Clarke*,
90 F.4th 636 (4th Cir. 2024) ....................12

*Evans v. Chalmers*,
703 F.3d 636 (4th Cir. 2012) ....................14

*Filarsky v. Delia*,
566 U.S. 377 (2012)....................5

*GE Inv. Priv. Placement Partners II v. Parker*,
247 F.3d 543 (4th Cir. 2001) ....................22

*Green v. iMentor, Inc.*,
2025 WL 3077594 (D. Md. Nov. 4, 2025) ....................25

*Guillen v. Esper*,
2020 WL 39650007 (E.D. Va. July 13, 2020)....................25

*Harvey v. CNN, Inc.*,
48 F.4th 257 (4th Cir. 2022) ....................16

*Holt v. Camus*,
128 F. Supp. 2d 812 (D. Md. 1999), *aff'd*, 217 F.3d 839 (4th Cir. 2000) ....................16

*Hunter v. Bryant*,
502 U.S. 224 (1991)....................6

*Kearney v. Maryland*,
2013 WL 3964995 (D. Md. Aug. 1, 2013) ....................13

*Knotts v. Bd. of Dirs. of JW Rugby Mem'l. Hosp.*,
2022 WL 18398897 (N.D.W.Va Dec. 9, 2022)....................6

*Labor v. Harvey*,
438 F.3d 404 (4th Cir. 2006) ....................25

*Lambert v. Givens*,
2026 WL 1363070 (D. Idaho May 15, 2026) ....................24

*Lambert v. Williams*,
223 F.3d 257 (4th Cir. 2000) ....................14

*Levy v. City of New Carrollton*,
2009 WL 10685579 (D. Md. Mar. 17, 2009)....24

*Marks v. Dann*,
600 F. App'x 81 (4th Cir. 2015)....8

*Massey v. Ojaniit*,
759 F.3d 343 (4th Cir. 2014)....14

*Md. Shall Issue, Inc. v. Moore*,
116 F.4th 211 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1049 (2025)....13

*MedSense, LLC v. Univ. Sys. of Md.*,
2020 WL 3791955 (D. Md. July 6, 2020)....8

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. and Rest. Emps. Int'l. Union*,
239 F.3d 172 (2d Cir. 2001)....11

*Minnesota v. Fleet Farm LLC*,
679 F. Supp. 3d 825 (D. Minn. 2023)....8

*Mitchell on Behalf of X.M. v. Dakota Cnty. Social Servs.*,
357 F.Supp.3d 891 (D. Minn. 2019)....5

*Nemphos v. Nestle Waters N. Am., Inc.*,
775 F.3d 616 (4th Cir. 2015)....25

*Nero v. Mosby*,
890 F.3d 106 (4th Cir. 2018)....1, 8

*NLRB v. Nueva Eng'g. Inc.*,
761 F.2d 961 (4th Cir. 1985)....4

*North Carolina v. McGuirt*,
114 F. App'x 555 (4th Cir. 2004)....19

*One Thousand Fleet Ltd. P'ship v. Guerriero*,
694 A.2d 952 (Md. 1997)....22

*Painter's Mill Grille, LLC v. Brown*,
716 F.3d 342 (4th Cir. 2013)....20

*Piscatelli v. Smith*,
35 A.3d 1140 (Md. 2012)....9, 15

*Prucha v. Weiss*,
197 A.2d 253 (Md. 1964)....10

*Pugh v. McDonald*,
266 F. Supp. 3d 864 (M.D.N.C. 2017) ....................25

*Reuber v. Food Chem. News, Inc.*,
925 F.2d 703 (4th Cir. 1991) ....................18

*Ritu Bhambhani, LLC v. Neuraxis, Inc.*,
2023 WL 3688336 (D. Md. May 25, 2023) ....................23

*Robinson v. City of Mount Rainier*,
2021 WL 1222900 (D. Md. Mar. 31, 2021) ....................15

*SEC v. Berrettini*,
218 F. Supp. 3d 754 (N.D. Ill. 2016) ....................21

*SEC v. Bradshaw*,
2024 WL 4521387 (W.D. Okla. Oct. 17, 2024) ....................21

*Shapiro v. Shellpoint Mortg. Servicing*,
2023 WL 1108019 (D. Md. Jan. 30, 2023) ....................23

*Soldal v. Cook County*,
506 U.S. 56 (1992) ....................12

*Spark Connected, LLC v. Semtech Corp.*,
502 F. Supp.3d 1131 (E.D. Tex. 2020) ....................10, 15

*Spear v. Town of West Hartford*,
954 F.2d 63 (2d Cir. 1992) ....................12

*Swart v. Miyares*,
156 F.4th 435 (4th Cir. 2025) ....................13

*Tanyi v. Appalachian State Univ.*,
2015 WL 4478853 (W.D.N.C. July 22, 2015) ....................5

*Thompson v. Clark*,
596 U.S. 36 (2022) ....................11

*Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*,
358 F. Supp. 2d 475 (D. Md. 2005) ....................20

*United States v. Minor*,
No. 22-CR-401 (D.D.C. July 24, 2023) ....................18

*United States v. Runner*,
143 F.4th 146 (2d Cir. 2025) ....................25

*United States v. Sterling*,
724 F. 3d 482 (4th Cir. 2013) ....................5

*US Airline Pilots Ass'n v. Awappa, LLC*,
615 F.3d 312 (4th Cir. 2010) ....................23

*Va. Off. for Prot. & Advoc. v. Stewart*,
563 U.S. 247 (2011)....................6

*Whye v. Concentra Health Servs., Inc.*,
2013 WL 5375167 (D. Md. Sept. 24, 2013), *aff'd*, 583 F. App'x 159 (4th Cir. 2014) .....17, 18

*Wultz v. Islamic Republic of Iran*,
755 F. Supp. 2d 1 (D.D.C. 2010)....................21

## CONSTITUTIONAL PROVISIONS

*Federal constitutional provisions*

Fourth Amendment ....................11, 12
Eleventh Amendment....................6

*State constitutional provisions*

Maryland Declaration of Rights
Article 2 ....................21
Article 5 ....................21
Article 24 ....................21
Article 26 ....................21

## STATUTES

*Federal statutes*

15 U.S.C. § 7901....................19

18 U.S.C.
§ 922(g)(1) ....................13
§ 926(a) ....................12, 17
§ 1951....................25
§ 1961.................... *passim*

42 U.S.C. § 1983.................... *passim*

*State statutes*

D.C. Code Ann. § 12-309(a)....................9

Md. Code. Ann., Cts. & Jud. Proc. § 5-522(b) ....................7

## RULE

Federal Rule of Civil Procedure Rule 9(b) ........................................................................25

## OTHER AUTHORITY

*Restatement (Second) of Torts* § 674 cmt. j (A.L.I 1977)...........................................................11

## INTRODUCTION

After almost 250 pages of pleadings and briefings before the Court—and with the opportunity to amend their complaint—Plaintiffs still have not stated a single plausible claim against Defendants. Plaintiffs' Opposition does not move the needle: it fails to identify plausible factual allegations in the Amended Complaint that support any of their kitchen-sink claims, identifies little to no legal support for their misconstrued theories of liability, ignores, and thereby concedes, entire arguments advanced by Defendants, and overlooks well-established and binding precedent demonstrating why the Amended Complaint should be dismissed. Despite these shortcomings, Plaintiffs seek yet another opportunity to make "every conceivable claim" against Defendants should the Amended Complaint still fall short (and it does). ECF-38 at 2 n.3. Plaintiffs' continued requests to "impose undue burdens on [Defendants] and the judiciary" through such "shotgun pleading" should be denied. *Id.*

One thing, however, is clear from Plaintiffs' parade of implausible allegations: they disagree with Defendants' ongoing, and proper, civil enforcement action pertaining to firearm straw purchases at their store. But, as the Fourth Circuit has admonished, this alone "does not entitle them to litigate their disagreement" before this Court, "much less recover damages." *Nero v. Mosby*, 890 F.3d 106, 131 (4th Cir. 2018). Simply put, Plaintiffs' disagreement with the *Engage* action does not give rise to a cause of action here. Moreover, Plaintiffs fail to overcome the host of immunities, privileges, and statutes outright barring their claims in the first instance—and even admit that many apply. If the Court reaches the merits, the result is the same: because Plaintiffs have not met the pleading requirements for *any* of their claims against Defendants, the Amended Complaint should be dismissed with prejudice in its entirety.

## ARGUMENT

### I. ABSOLUTE IMMUNITY BARS PLAINTIFFS' AMENDED COMPLAINT.

"Plaintiffs expressly concede that statements within the Engage complaint and in open court proceedings are protected by absolute privilege." Opp. 7. Despite this concession, Plaintiffs contend that their Amended Complaint is not barred by absolute immunity. *Id.* at 7–8. This is a meritless argument.

Plaintiffs aver that absolute immunity cannot extend to actions of prosecutors outside the courtroom, such as in press statements. *Id.* at 6–7. To that end, Plaintiffs claim they have "identifie[d]" different "categories of conduct that fall outside the judicial phase," to overcome absolute immunity. *Id.* at 6. But Plaintiffs cannot merely identify "categories" of facts that might escape immunity; rather, Plaintiffs must state a *claim* on which relief can be granted. And none of Plaintiffs' claims relies on conduct unrelated to the *Engage* litigation. Instead, while Plaintiffs purport to take issue with Defendants' press statements, Am. Compl. ¶ 80–90, the claims in the Amended Complaint continue to exclusively rely on statements purportedly made by Defendants in the *Engage* complaint and other court filings.

Indeed, Plaintiffs do not dispute that "all five identified statements by Plaintiffs are actually citations to the Engage complaint, not the press release." Opp. at 15. Yet Plaintiffs maintain that they somehow referenced the press release because "these statements were reproduced in the press release without qualification[.]" *Id.* Not so. *None* of the five cited statements from the *Engage* complaint was repeated verbatim in the press release. *See* ECF-8, Ex. 1. To be sure, the press release and the *Engage* complaint described the lawsuit using similar language, but Plaintiffs have failed to identify any actionable language from the press release itself. As the Amended Complaint fails to clearly point to any problematic statement or other action by Defendants outside of the *Engage* litigation, absolute immunity bars this entire action.

The same conclusion holds for Plaintiffs' claim that absolute immunity does not protect "suppression of exculpatory material during the investigative phase" and that Defendants "concealed … from the Engage complaint" that "every challenged sale had been cleared by their own state licensing division." Opp. 6–7. This argument is wrong at every turn.

*First*, Mr. Minor was not "cleared" or "approved" to purchase firearms in a manner that obviated firearm sellers' obligations to halt a sale if they know or have reasonable cause to believe the sale is a straw purchase. *Id.* at 6–7, 14. As discussed in Defendants' Motion, but unaddressed by Plaintiffs, Maryland does not "approve" firearm purchases. Mot. 34–35.[1]

*Second*, the fact that Mr. Minor received "not disapproved" responses respecting his firearm purchases was not "suppressed"; Plaintiffs have possessed those very responses from the moment they were originally issued (and could have publicized these responses themselves). *See* Opp. 6. Nor were these communications "concealed" from the *Engage* complaint. *Id.* at 3. Rather, Defendants clearly explained that "*every* regulated purchase of a firearm in Maryland must involve … receipt of an email indicating that [the buyer's] application was 'Not Disapproved.'" Defs.' Ex. 2 ¶ 50 (emphasis added).

*Finally*, decisions about what level of factual detail to include in the *Engage* complaint plainly are connected to the judicial process, rather than any investigation, and are protected by absolute immunity. *See Carter v. Burch*, 34 F.3d 257, 262 (4th Cir. 1994) (holding that decision of what evidence to give defense counsel involved "actions as an advocate of the state" and was protected by absolute immunity). Civil plaintiffs are not required to put forth in their complaint wording preferred by defendants or to spell out the facts in a way that a defendant might argue provides a defense. *Cf. 1000 Friends of Md. v. Ehrlich*, 907 A.2d 865, 870 n.8 (Md. Ct. Spec.

[1] Of course, neither the District nor Everytown played any role in the firearm sales to Mr. Minor.

App. 2006) (noting a complaint need only "relate[] just the facts necessary to establish [the] elements of the claims" (citation modified)). Suggesting otherwise here would encroach on well-established immunity.

## II. QUALIFIED IMMUNITY ALSO BARS PLAINTIFFS' CLAIMS.

Plaintiffs do not address—and thus concede—that qualified immunity applies to their § 1983 claims because Defendants sought to enforce valid state laws, and that qualified immunity applies to their RICO claim because there is no case law holding that a similar civil enforcement proceeding violated RICO. *See* Mot. 11–14, 16; Opp. 8–10, 24–26; *Coomes v. Moran*, 2025 WL 2106739, at *39 (D. Md. July 28, 2025) (Hollander, J.) (applying rule that failure to respond to argument in a motion concedes the argument).

Nonetheless, Plaintiffs argue that qualified immunity does not apply to their § 1983 claims because they alleged "three areas of specific conduct" that supposedly violated their constitutional rights: (1) "Defendants knowingly concealed exculpatory government records," (2) "Defendants executed a coordinated media campaign," and (3) "Defendants embedded a private advocacy organization within official government proceedings to advance that organization's political agenda." Opp. 9. But Plaintiffs fail to identify any case law that "clearly establishe[s]" such conduct as violating a constitutional right. *See Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024).

Instead, Plaintiffs cite only one case, *Brady v. Maryland*, 373 U.S. 83 (1983), which held, in a criminal case, that the Due Process Clause "required disclosure of specific exculpatory materials to afford special protection to criminal defendants who face penal sanctions if convicted." *NLRB v. Nueva Eng'g. Inc.*, 761 F.2d 961, 969 (4th Cir. 1985). Neither the Supreme Court nor the Fourth Circuit has extended *Brady* to civil proceedings. Indeed, in the Fourth Circuit and elsewhere, *Brady* does *not* apply in a variety of non-criminal contexts. *See, e.g.*, *id.* at 969

(declining to apply *Brady* in agency proceeding that was "civil in nature" and did "not involve potential incarceration"); *Tanyi v. Appalachian State Univ.*, 2015 WL 4478853, at *5 (W.D.N.C. July 22, 2015) ("[T]his Court is aware of no Fourth Circuit case law extending the [*Brady*] rule to civil matters."). Plaintiffs' (incorrect) assertion that there is an open "question" as to "[w]hether *Brady*'s principles extend with equal force to a civil enforcement context," Opp. 9, amounts to a concession that qualified immunity applies. *See deWet v. Rollyson*, 157 F.4th 344, 349 (4th Cir. 2025) (explaining that qualified immunity exists because "[w]e don't impose on officials a duty to resolve subtle or open issues" (alteration and internal quotation marks omitted)).[2]

**Everytown is entitled to qualified immunity:** Defendants previously demonstrated that Everytown also is entitled to qualified immunity from Plaintiffs' § 1983 claims. *See Filarsky v. Delia*, 566 U.S. 377, 393–94 (2012); Mot. 11–12. Plaintiffs respond that Everytown is not entitled to qualified immunity because it was not a "private actor … acting lawfully within the scope of a legitimate government function" and asks the Court to view the issue of Everytown's immunity as "a contested factual and legal question." Opp. 9–10. But Plaintiffs' purported "factual and legal" dispute is founded on vague and conclusory assertions, in claiming without explanation that Everytown "omitted exculpatory facts" from the press release that "contain[ed] false declarations of guilt," and "conspired with government actors to suppress Plaintiffs' constitutional rights." *Id.* As discussed throughout, and in Defendants' Motion, these conclusory allegations are meritless and untrue. Mot. 11–14. Where there is no plausible dispute on the issue of Everytown's

[2] *Brady* also is inapposite because it relates to disclosure of exculpatory evidence in time for a *criminal* defendant to mount a defense. *See United States v. Sterling*, 724 F. 3d 482, 511 (4th Cir. 2013). It does not suggest that exculpatory evidence has to be included in a charging document (much less in a civil complaint). *See Mitchell on Behalf of X.M. v. Dakota Cnty. Social Servs.*, 357 F.Supp.3d 891, 907 n.18 (D. Minn. 2019) ("As Defendants correctly observe, there is no duty to disclose exculpatory evidence in a civil action." (citation omitted)).

immunity, the Court may find qualified immunity for Everytown at this stage. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (emphasizing "the importance of resolving immunity questions at the earliest possible stage in litigation"); *Dwyer v. Nay*, 2026 WL 632546, at *4–5 (Md. App. Ct. Mar. 6, 2026) (affirming State personnel immunity on the pleadings); *Knotts v. Bd. of Dirs. of JW Rugby Mem'l. Hosp.*, 2022 WL 18398897, at *6 (N.D.W.Va Dec. 9, 2022) (finding qualified immunity on the pleadings where "Plaintiffs' allegations, which mainly are conclusory and unsupported … do not set forth how the acts complained of violate clearly established law").

## III. STATE SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS AGAINST MARYLAND.

Plaintiffs concede that "the Eleventh Amendment bars damage claims against the State of Maryland." Opp. 8. Plaintiffs nonetheless contend that sovereign immunity does not bar claims for "prospective injunctive relief" against Maryland. *Id.* Yet the Amended Complaint contains no prayer for injunctive relief. *Cf. Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (holding that "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" (alteration in original) (citation omitted)). Indeed, each of Plaintiffs' requests for relief seek only compensatory and punitive damages, rather than any type of prospective injunction. *See, e.g.*, Am. Compl. ¶ 92(a)-(d). Nor do Plaintiffs explain how the press release "remain[ing] online" constitutes an ongoing violation of federal law. Opp. 8. With no claimed ongoing violation of federal law, and no prospective injunctive relief requested, Plaintiffs' claims against Maryland are barred by sovereign immunity.

## IV. THE MTCA BARS STATE LAW CLAIMS AGAINST ATTORNEY GENERAL BROWN.

Defendants previously explained that Maryland Attorney General Brown is immune from state law claims asserted against him in his individual capacity, pursuant to the MTCA. *See* Mot. 17–19. That law bars claims against state officials individually for (1) actions taken in the scope of their employment, which (2) were taken without malice or gross negligence. Md. Code. Ann., Cts. & Jud. Proc. § 5-522(b).

As to whether the actions alleged were within the scope of Attorney General Brown's employment, the Amended Complaint is inconsistent, alleging simultaneously that Attorney General Brown acted "within the scope of [his] employment," Am. Compl. ¶ 55, and that he acted "outside the scope of his lawful authority." *Id.* ¶ 22. Plaintiffs offer the confusing argument that officials can somehow act within the formal scope of their employment and at the same time "outside the bounds of lawful authority." Opp. 11. Even if this might be possible, Plaintiffs fail to describe how Attorney General Brown's actions here plausibly fell outside the scope of his employment. Without a substantive argument on this score and given the ordinary nature of his alleged actions, such as speaking at a press conference, there can be no plausible dispute that Attorney General Brown acted within the scope of his employment.

Turning to the second prong of the MTCA, Plaintiffs do not contend that Attorney General Brown acted with gross negligence, "waiv[ing]" any argument on that score. *See, e.g.*, *Campos v. Headlights*, Inc., 2023 WL 12239452, at *8 (E.D.N.C. Aug. 29, 2023). Left with an allegation only of malice, Plaintiffs' argument reduces to the following claim: Mr. Minor passed state background checks during his straw purchases, but Attorney General Brown purportedly "concealed" this fact "that would have exonerated Plaintiffs … from the public and from pleadings" in the *Engage* case. Opp. 10. This allegation is meritless.

Again, this point was stated explicitly in the *Engage* complaint: "*every* regulated purchase of a firearm in Maryland must involve . . . receipt of an email indicating that [the buyer's] application was 'Not Disapproved.'" Defs.' Ex. 2 ¶ 50 (emphasis added).

Moreover, where a purported firearm buyer passes a background check, that does not "exonerate[]" the seller from liability in the transaction. As explained at length, Mot. 34–35, firearm sellers may be held liable if they know or have reasonable cause to believe the buyer is a straw purchaser, regardless of whether the purported buyer passes a background check. *See Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 833 (D. Minn. 2023) (explaining that federal law bans firearm transfers to straw purchasers, "even if the dealer has complied with background check requirements"). Otherwise, firearm sellers could knowingly participate in straw purchasing schemes so long as the purported buyer passes a background check. It is not noteworthy that Mr. Minor passed a background check before purchasing from Plaintiffs' store, since that is a necessary condition for any straw purchase scheme. *See, e.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 120 n.4 (2d Cir. 2011) ("The stand-in, rather than the true buyer, completes the official form registering the sale, … and submits to the federally mandated background check.").

At bottom, Plaintiffs are left with only a complaint that Attorney General Brown did not say more about an unremarkable fact in filing and announcing a lawsuit directed against straw purchasing. Plaintiffs thus fall far short of the "high bar" of demonstrating an "evil motive" supporting a scheme to "deliberately and willfully injure" them. *See Marks v. Dann*, 600 F. App'x 81, 86 (4th Cir. 2015) (citation omitted); *MedSense, LLC v. Univ. Sys. of Md.*, 2020 WL 3791955, at *7 (D. Md. July 6, 2020). To hold otherwise would jeopardize MTCA immunity whenever a public official explains his or her litigation decisions. *See Nero*, 890 F.3d at 132 (Wilkinson, J.,

concurring) ("By advancing a theory of tort liability for explanations of official acts, the officers here strike at the very heart of the democratic dialogue. Courts must repel such attacks.").

## V. PLAINTIFFS CONCEDE NEARLY ALL CLAIMS AGAINST ATTORNEY GENERAL SCHWALB AND THE DISTRICT.

Plaintiffs do not address that (1) their § 1983 claims against the District and Attorney General Schwalb fail to plead *Monell* liability, Mot. 14–15; (2) their state-law claims against the District fail for failure to give notice compliant with D.C. Code Ann. § 12-309(a), Mot. 20; and (3) their state-law claims against the District and Attorney General Schwalb are barred by District-law immunity for discretionary acts, *id.* at 20–22. By failing to respond to any District-specific arguments, Plaintiffs concede them. *See Coomes*, 2025 WL 2106739, at *39. In any event, District law provides immunity to Attorney General Schwalb and the District for statements to the press on matters related to official responsibilities, immunizing both District defendants from claims related to the press release. Mot. 21–22.

## VI. THE FAIR REPORTING PRIVILEGE PROTECTS THE PRESS RELEASE.

While Plaintiffs admit that "[t]he fair reporting privilege protects fair and substantially accurate accounts of proceedings," they claim that the Amended Complaint "identifies five specific statements that appear in the press release as unqualified assertions" such that the fair reporting privilege does not apply. Opp. 7. But, as explained *supra* at 2, these statements are from the *Engage* complaint, not the press release. *See* Opp. 15–16. Plaintiffs have failed to quote any language from the press release itself, much less language that is not a "fair and substantially accurate" account of the *Engage* complaint. *See Piscatelli v. Smith*, 35 A.3d 1140, 1149 (Md. 2012) (citation omitted).

Moreover, Plaintiffs already have conceded that the press release and the *Engage* complaint "contain[ed] the same false allegations," Am. Compl. ¶ 133(a), do not address Defendants'

argument on this point, Mot. 32, and are now bound by their concession. *See Butts v. Prince William Cnty. Sch. Bd.*, 844 F.3d 424, 432 & n.3 (4th Cir. 2016). There can be no plausible dispute regarding whether the press release was a "faithful[] reproduc[tion]" of the *Engage* complaint when Plaintiffs themselves fail to identify a single statement in the press release that substantively differs from the protected statements in the *Engage* complaint. Opp. 7–8.

Further, Plaintiffs offer no support for their argument that the press release does not qualify for the fair reporting privilege because it purportedly "present[ed] allegations as adjudicated facts." *Id*. at 7. The press release refutes this argument: it repeatedly uses such prefatory language as "[t]he lawsuit alleges" and "[a]s alleged in our complaint," ECF-8, Ex. 1, signaling to a "reasonable reader," Opp. 7, that any statements contained in the press release are not "adjudicated facts," *id.* Plaintiffs cite no authority demonstrating otherwise.

Nor do Plaintiffs cite authority for their overall misinterpretation of the meaning of "fair" in the fair reporting privilege. Here, Plaintiffs seem to suggest that an announcement of civil enforcement proceedings loses its privilege the moment the complaint is dismissed or the parties are found not liable. *Id.* at 7–8. Such interpretation of the privilege is inconsistent with precedent demonstrating that the privilege applies to *contemporaneous* announcements of legal proceedings. *See* Mot. 32; *Spark Connected, LLC v. Semtech Corp.*, 502 F. Supp.3d 1131, 1140 (E.D. Tex. 2020) (explaining that press release "echo[ing] the pleadings and accurately describ[ing] the case thus far" "was not false or misleading *at the time of publication*" because it was "an accurate snapshot, reflecting the litigation's state at the time it was posted" (emphasis in original)).

Finally, to the extent Plaintiffs now seek an injunction ordering Defendants to retract the press release—despite seeking only monetary relief in the Amended Complaint—the Court should deny the request. Opp. 8*;* Am. Compl. ¶ 92(a)-(d); *see Prucha v. Weiss*, 197 A.2d 253, 256 (Md.

1964) ("[E]quity lacks power to issue an injunction restraining the publication of defamatory matter."); *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. and Rest. Emps. Int'l. Union*, 239 F.3d 172, 177 (2d Cir. 2001) (similar); *see also Consumer Prot. Div. Off. of Atty. Gen. v. Consumer Pub'l. Co.*, 501 A.2d 48, 66 (Md. 1985) (noting that "the Attorney General is clearly authorized to issue a press release at the time charges are filed against an alleged violator" and doing so does not violate the subject's due process rights).

## VII. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1983.

### A. Plaintiffs Fail To State a Claim for Malicious Prosecution or a Violation of Substantive Due Process.

**Malicious Prosecution:** Plaintiffs make two arguments related to their malicious prosecution claim, but neither is correct. *First*, Plaintiffs argue that—although *Engage* is on appeal—they satisfy the favorable-termination element because that element "focuses on the trial-court termination of the action." Opp. 11. But Plaintiffs ignore the rule that "[i]f an appeal is taken, the proceedings are not terminated." Mot. 23 (quoting Restatement (Second) of Torts § 674 cmt. j (A.L.I 1977)). Plaintiffs find no support for a contrary rule in *Thompson v. Clark*, 596 U.S. 36, 42 (2022), *see* Opp. 11, because *Thompson* was a "narrow dispute," 596 U.S. at 43, in which the Supreme Court held only that a plaintiff need not "demonstrate that the [criminal] prosecution ended with some affirmative indication of his innocence," *id.* at 39. *Thompson* did not address what effect a pending appeal has on the favorable-termination element.

*Second*, Plaintiffs argue that the "compelled" production of firearm transaction records as part of civil discovery in *Engage*, "without a warrant and without probable cause," qualifies as a Fourth Amendment seizure that supports a § 1983 malicious prosecution claim. Opp. 12. But, as Defendants previously explained, no production was compelled; rather Plaintiffs voluntarily

produced a handful of pages pursuant to ordinary civil discovery in *Engage*, which cannot constitute a seizure. *See* Mot. 23, 38–39.

Plaintiffs also do not address precedent holding that a Fourth Amendment malicious prosecution claim arises only from criminal proceedings and seizures in the form of arrests and detentions, *English v. Clarke*, 90 F.4th 636, 647 (4th Cir. 2024), none of which occurred here. *See* Mot. 22–23; *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (explaining that § 1983 malicious prosecution claim may not arise from civil proceeding).

Instead, Plaintiffs argue that *Soldal v. Cook County*, 506 U.S. 56, 61 (1992), "held that the Fourth Amendment protects against seizures of property as well as persons, and that this protection applies in civil as well as criminal contexts." Opp. 12. *Soldal*, however, held that removing a mobile home from a mobile home park as part of an eviction constituted a seizure. 506 U.S. at 61–62. The Supreme Court explained that a seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.* at 61 (citation modified). *Soldal* did not address, let alone alter, the elements of a malicious prosecution claim. Nor did *Soldal* hold that producing records in civil discovery is a seizure. To the contrary, *Soldal*'s definition of a "seizure" is unhelpful to Plaintiffs because producing *copies* of records that are already subject to government inspection, *see* Mot. 27, 37–40, does not interfere with a civil defendant's possessory interests in the records.

That federal law prohibits the federal government from creating a national firearms registry also does not transform Plaintiffs' participation in the *Engage* discovery into a Fourth Amendment seizure. *See* Opp. 12 (citing 18 U.S.C. § 926(a)). By its plain terms, § 926(a) constrains the federal government only, not the states or the District. And even then, it does not prohibit the federal

government from obtaining records from sellers as part of investigations or to trace firearms. *See Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 283–85, 288–89 (4th Cir. 2004).

**Substantive Due Process:** Plaintiffs also erroneously argue that the Amended Complaint states a substantive due process claim, reiterating their baseless argument that Defendants "concealed" the fact that Mr. Minor cleared state background checks. Opp. 12–13.[3]

Again, the *Engage* complaint explained that "every" regulated purchase of firearms in Maryland involves receipt of a "not disapproved" determination. *See supra* at 3. And that disclosed fact was not "exculpatory" for Plaintiffs. *See id.*; Mot. 34–35.

As the Fourth Circuit and Defendants already explained, a straw purchaser is typically legally eligible to purchase a firearm but purchases the firearm for a third-party who is legally ineligible (for example, a felon, *see* 18 U.S.C. § 922(g)(1)). *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 228 & n.18 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1049 (2025); *see* Mot. 34–35. The fact that Mr. Minor's sales were "not disapproved," *see* Mot. 34–35, did not make the transactions lawful, *contra* Opp. 13. As discussed *supra* at 8, Defendants' decisions to bring the *Engage* therefore neither evinced any evil motive nor met the high bar of "conscience-shocking" behavior. Moreover, substantive due process does not confer a right of Plaintiffs to order what the government must include in complaints or press releases.

All told, Plaintiffs' substantive due process claim boils down to disagreement with the merits of *Engage*. But such a claim does not arise simply because an attorney general's legal position "might elicit disagreement." *See Swart v. Miyares*, 156 F.4th 435, 443 (4th Cir. 2025).

---

[3] Plaintiffs do not argue that they stated a *procedural* due process claim. *See* Opp. 12–13; Mot. 28. To the extent the Amended Complaint attempted to allege such a claim, Plaintiffs have now "abandoned" it. *Kearney v. Maryland*, 2013 WL 3964995, at *14 (D. Md. Aug. 1, 2013) (Hollander, J.).

Nor does substantive due process protect "the right to be free from prosecution without probable cause," *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000), or provide a "basis" for a § 1983 malicious prosecution claim, *Evans v. Chalmers*, 703 F.3d 636, 646 n.2 (4th Cir. 2012).

### B. Plaintiffs Fail To State a Section 1983 Conspiracy Claim.

Because Plaintiffs fail to plausibly allege a deprivation of any constitutional right, the Court should dismiss their § 1983 conspiracy claim. *See Massey v. Ojaniit*, 759 F.3d 343, 358 (4th Cir. 2014). Additionally, Plaintiffs' arguments regarding a conspiracy to deny their constitutional rights fail.

Plaintiffs point to allegations in the Amended Complaint arguing that Defendants together brought and publicized enforcement actions against firearms retailers. Opp. 13–15. But such actions fall within the bounds of usual civil enforcement efforts, so Plaintiffs have failed to allege conduct that demonstrates an "entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Although Plaintiffs argue that Defendants' conduct was unusual because litigators from a "private advocacy organization" were working with the government, Opp. 14, Plaintiffs ignore that Maryland law explicitly authorizes enlisting the assistance of pro bono outside counsel, *see* Mot. 3 n.2.

Further, Plaintiffs do not explain how Defendants evinced a motive to deprive Plaintiffs of constitutional rights. *See id.* at 25–26. Plaintiffs complain that the alleged overt acts violated constitutional rights, Opp. 15, but that does not show a conspiratorial *purpose* behind the *Engage* litigation to cause those alleged constitutional violations. In any event, none of the alleged actions in *Engage* amounted to constitutional violations. *See supra* at 4-5; Mot. 22–24, 26–28.

## VIII. PLAINTIFFS FAIL TO STATE A CLAIM FOR DEFAMATION.

Maryland's fair reporting privilege alone bars Plaintiffs' defamation claim, but Plaintiffs also have not plausibly alleged the necessary elements of their claim.

*First*, Plaintiffs have not sufficiently alleged which statements in the press release are defamatory. While Plaintiffs continue to argue that five statements from the press release are defamatory, those statements are pulled from the absolutely privileged *Engage* complaint, not the press release. *See supra* at 2. Plaintiffs plainly do not "specifically allege" each purportedly "defamatory statement" as required under Maryland law. *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 268 (D. Md. 2015) (citation omitted). To the extent Plaintiffs allege that "subsequent public statements by Defendants" were defamatory, Opp. 15, such a vague reference to other purportedly defamatory statements is insufficient.

*Second*, Plaintiffs fail to show that any statements in the press release are "not substantially correct." *Robinson v. City of Mount Rainier*, 2021 WL 1222900, at *12 (D. Md. Mar. 31, 2021) (citation omitted). Even if Plaintiffs had identified specific statements from the press release, they could not be construed in isolation; rather, "the publication must be read as a whole," since "words have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed." *Piscatelli*, 35 A.3d at 1147 (alteration and citation omitted). A plain reading of the entire press release reveals that any purportedly defamatory statements were incorporated into an *announcement* that a civil action had been filed related to alleged gun violence. To illustrate, the press release stated: "*The lawsuit alleges that* by ignoring obvious warning signs … the defendants violated the law by facilitating illegal gun sales" (which is true) and: "*The lawsuit alleges that* [defendants] … ignored clear warning signs … in violation of state and federal laws" (also true). ECF-8, Ex. 1 (emphases added). Because the press release accurately conveyed the allegations in the *Engage* complaint, Plaintiffs cannot show those statements to be false as a matter of law. *See Spark Connected*, 502 F. Supp. 3d at 1140.

*Finally*, Plaintiffs fail to plausibly allege acts supporting actual malice. Mot. 33–35. Plaintiffs continue to argue that Defendants' purported failure to disclose Mr. Minor's "not disapproved" designation amounts to a deliberate withholding of exculpatory information in the press release and therefore demonstrates actual malice. Opp. 16–18. But, as Defendants explained before, Mot. 34–35, and repeat here, *supra* at 3, 8, this is a meritless red herring.

In any event, Plaintiffs identify no authority supporting the propositions that failure to write the press release in a light most favorable to Plaintiffs evinces actual malice or that Defendants are liable for defamation because they purportedly withheld a fact Plaintiffs (incorrectly) view as exculpatory. Opp. 17; *see supra* at 8. Nor do Plaintiffs address Defendants' case law demonstrating that actual malice cannot be inferred from such purported omission. Mot. 34–35.

## IX. PLAINTIFFS FAIL TO STATE ANY PRIVACY CLAIM.

Plaintiffs' Opposition also cannot salvage their invasion of privacy claims. Rather than addressing the fundamental legal deficiencies identified in Defendants' Motion, Plaintiffs resort to recharacterizing their claims and misrepresenting both the *Engage* record and governing law.

### A. Plaintiffs' False Light Claim Rises and Falls with Their Defamation Claim.

Plaintiffs concede that the false light claim is "grounded in the same core conduct as the defamation claim" and yet contend it "survives for parallel reasons." Opp. 22. This reasoning is self-defeating. As Defendants established, Mot. 36, Maryland law applies the same legal standards to both claims, and the Fourth Circuit has refused to permit a false light claim to proceed where the underlying defamation claim fails. *Holt v. Camus*, 128 F. Supp. 2d 812, 816 (D. Md. 1999), *aff'd*, 217 F.3d 839 (4th Cir. 2000); *Harvey v. CNN, Inc.*, 48 F.4th 257, 275 (4th Cir. 2022) (similar).

Plaintiffs' attempt to characterize privacy torts as "independent causes of action with distinct elements" does not change the analysis. Opp. 22. Nor have Plaintiffs met the elements of

their false light claim. Mot. 36–37. For instance, Plaintiffs claim to have adequately pled actual malice because Defendants allegedly "possessed the approval records and deliberately omitted them while making public declarations of illegality." Opp. 23. As discussed, however, this argument is meritless. Mot. 36–37.

**B. Plaintiffs' Intrusion Upon Seclusion Claim Fails.**

Plaintiffs have failed to articulate any reasonable expectation of privacy Defendants purportedly violated. Plaintiffs acknowledge that "[f]irearms dealers do submit to lawful regulatory inspection," yet insist that they did not "consent to having their private customer transaction records extracted through civil processes." Opp. 23. This distinction is legally irrelevant. As Defendants demonstrated, participants in a pervasively regulated industry have diminished privacy expectations as a matter of law. *Whye v. Concentra Health Servs., Inc.*, 2013 WL 5375167, at *20 (D. Md. Sept. 24, 2013), *aff'd*, 583 F. App'x 159 (4th Cir. 2014); Mot. 38. Plaintiffs cannot claim a reasonable expectation of privacy in records generated pursuant to, and required by, this comprehensive regulatory framework. And "private" business transactions are, of course, routinely subject to discovery when those transactions are implicated in a civil lawsuit.

Plaintiffs' reliance on the Firearms Owners' Protection Act, 18 U.S.C. § 926(a), fares no better. Opp. 23. That statute restricts federal *recordkeeping practices*; it does not create a privacy right that immunizes firearm transaction records from production in state-court civil litigation. Plaintiffs cite no authority—and Defendants are aware of none—holding that § 926(a) creates a reasonable expectation of privacy that prevents the production of business records in a civil enforcement proceeding.

Moreover, any routine civil discovery in *Engage* does not constitute a highly offensive intrusion Plaintiffs were "compelled" to endure. Mot. 38. As Defendants explained, there was no court order compelling United's extremely limited and voluntary document production in *Engage*.

*Id.* Plaintiffs simply ignore that fact. Their repeated references to business records being "extracted through civil processes" cannot obscure the fact that United itself chose to produce nine pages of non-confidential documents and nothing more. Opp. 22, 23.

**C. Plaintiffs' Public Disclosure of Private Facts Claim Also Fails.**

Plaintiffs' claim of disclosure of private facts fares no better. Such a claim requires that the disclosed information concern an issue *not* of public concern. *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 719 (4th Cir. 1991); Mot. 39. The potential facilitation of illegal firearm sales in the Washington, D.C. metropolitan area is, by any measure, a matter of legitimate public concern. Plaintiffs cannot convert this into a private matter simply by labeling the government's allegations about straw purchases "unproven," Opp. 23, particularly when the Amended Complaint acknowledges that the buyer at the center of these transactions was "subsequently convicted in federal court of engaging in the business of dealing firearms without a license." Am. Compl. ¶ 17.[4]

Plaintiffs also fail to identify what specific private facts were supposedly disclosed. The transactions Plaintiffs refer to are transactions conducted through state and federal regulated processes that Plaintiffs themselves (along with their customers) participated in voluntarily. Information concerning commercial activity in a pervasively regulated industry is not "private" within the meaning of this tort. *See Whye*, 2013 WL 5375167, at *20.

## X. PLAINTIFFS DECLINE TO DEFEND THEIR PURPORTED PLCAA CLAIM.

Defendants explained that Plaintiffs' purported claim for a violation of the Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901-7903, fails at the threshold because

---

[4] Plaintiffs suggest that Mr. Minor had a firearm "Dealer" license. Opp. 3. This is false, as the public record of Mr. Minor's conviction for dealing in firearms without a license demonstrates. Judgment, *United States v. Minor*, No. 22-CR-401 (D.D.C. July 24, 2023).

PLCAA neither creates a private right of action nor confers an individual right that can be vindicated under § 1983. Mot. 40–41. Plaintiffs make no effort to defend their concededly novel claim. Instead, Plaintiffs merely assert that it is "a genuinely difficult question" and an "unsettled question of first impression." Opp. 18. Not so. Because the statute conclusively forecloses the claim, Mot. 40–41, it should be dismissed.

Indeed, Plaintiffs practically concede as much, arguing only that "dismissal *with prejudice* is an inappropriate remedy." Opp. 18 (emphasis added). Although this Court has already given Plaintiffs one opportunity to replead their claims, Plaintiffs now seek "leave to replead" a second time, "so that [this] argument may be developed more fully at a later stage or preserved for appeal." *Id.* Plaintiffs have had two opportunities to plead this claim already and now make no effort to defend it. Moreover, leave to replead would be futile. As Defendants explained, Mot. 40–41, Plaintiffs' claim fails because it is not legally cognizable; no set of facts could rehabilitate it.

## XI. PLAINTIFFS FAIL TO STATE A CLAIM FOR INTERFERENCE WITH BUSINESS CONTRACTS OR RELATIONSHIPS.

Plaintiffs fail to state a claim for interference with business contracts or business relationships. Defendants previously discussed the two distinct torts that Plaintiffs may be attempting to plead—(1) interference with business contracts and (2) interference with business relationships—and Defendants explained in detail why Plaintiffs' claims fail under either standard. Mot. 41–43. In Opposition, Plaintiffs still fail to specify which claim they raise. Opp. 19 (asserting a "viable claim for tortious interference" without explanation). For this reason alone, Plaintiffs' interference claim should be dismissed. *See North Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004) (affirming that complaint is subject to dismissal where it "does not permit the defendants to figure out what legally sufficient claim the plaintiffs are making").

Even if the Court were to try to divine Plaintiffs' attempted legal claim(s), the result would be the same. As best Defendants can discern, because Plaintiffs seek to buttress allegations relevant to a business contracts claim, that is the sole claim they maintain here. *See* Opp 19 (disputing that Plaintiffs "fail to identify specific contracts and cannot establish that Defendants acted without justification"). But Plaintiffs fail to satisfy at least four of the necessary elements for a claim of interference with business contracts. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353–54 (4th Cir. 2013); Mot. 42.

*First*, Plaintiffs argue that they have identified "categories of specific relationships with identified counterparties." Opp. 19. But Plaintiffs again fail to identify a single contract. Nor do Plaintiffs explain whether and why their purported relationships constitute legally protected interests. *See Painter's Mill Grille*, 716 F.3d at 353–54.

*Second*, Plaintiffs again make no plausible allegation that Defendants had knowledge of any contract at issue here. Instead, Plaintiffs argue, without support, that this factor is satisfied due to "[f]oreseeable harm to identified categories of business relationships." Opp. 20. Not so. Plaintiffs must show Defendants had knowledge of the contracts at issue. *See, e.g.*, *Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 481 (D. Md. 2005) (rejecting claim where there was "no indication in the record that the Defendants had any knowledge of the reservation contract"); *Brass Metal Prods., Inc. v. E-J Enters., Inc.*, 984 A.2d 361, 384 (Md. Ct. Spec. App. 2009) (similar).

*Third*, and relatedly, Plaintiffs make no attempt to show that Defendants intentionally caused third parties to breach contracts of which Defendants were not aware. Mot. 42.

*Fourth*, Plaintiffs argue that the *Engage* litigation was commenced "without justification" because the press release expressed a goal of holding gun sellers "accountable" in order to "deter

other retailers." Opp. 20. But the justification of the *Engage* lawsuit was set forth in the lawsuit itself, and the *Engage* complaint was reasonably predicated on allegations that defendant gun sellers knew or should have known that Mr. Minor was engaging in repeated straw purchases. *See* Mot. 3–4. Even crediting Plaintiffs' allegations for the sake of argument, enforcing the law is a proper aim of public civil enforcement litigation, as is the goal of deterring additional unlawful conduct. Indeed, courts and litigants frequently apply considerations of deterrence in the civil context. *See, e.g.*, *SEC v. Bradshaw*, 2024 WL 4521387, at *7 (W.D. Okla. Oct. 17, 2024) ("[D]eterrence is an appropriate factor for [the court] to consider in assessing a civil penalty"); *SEC v. Berrettini*, 218 F. Supp. 3d 754, 763 (N.D. Ill. 2016) (similar).

## XII. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MARYLAND DECLARATION OF RIGHTS.

The Court should also dismiss Plaintiffs' claim alleging violations of the Maryland Declaration of Rights, for multiple reasons.

*First*, Plaintiffs make no argument as to their claim under Article 2, waiving any such contention. *See* Mot. 44.

*Second*, Plaintiffs concede that their claims under Articles 24 and 26 should be construed coextensively with their "federal constitutional claims under Counts I and II." Opp. 21. Accordingly, Plaintiffs' claims under Articles 24 and 26 are duplicative and should be dismissed for the same reasons as their federal claims. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 18 (D.D.C. 2010) ("[C]ourts should dismiss claims that are duplicative of other claims.").

*Third*, Plaintiffs fail to state an abuse of process claim under Article 5. To support this claim, Plaintiffs agree they must show "first, that the defendant willfully used process after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendant's perverted use of process." *One*

*Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997) (citations omitted). But Plaintiffs' arguments here are groundless.

Specifically, Plaintiffs vaguely aver that Defendants used civil process for a purpose not contemplated by law, by using "the civil discovery process to compel production" of records to "generate material for reputational attack." Opp. 21. But there was no compelled production of records in *Engage*; rather, Plaintiffs produced a mere nine pages of documents in ordinary civil discovery. *See* Mot. 39. Plaintiffs do not dispute this fact. Nor do Plaintiffs explain how any document production in *Engage* was used or intended for "reputational attack," Opp. 21, when the document production occurred well after the issuance of the sole press release about which Plaintiffs complain. Plaintiffs thus fail to show that Defendants used civil process in a manner not contemplated by law, or in furtherance of some ulterior motive.

Further, and contrary to Plaintiffs' argument, Opp. 21–22, "civil abuse of process requires that the plaintiff" show "an arrest of the person or a seizure of property of the plaintiff[.]" *One Thousand Fleet Ltd. P'ship*, 694 A.2d at 960; *accord Charles v. Charles*, 336 A.3d 728, 741 (Md. App. Ct. 2025), *cert. denied*, 345 A.3d 591 (Md. 2025). Plaintiffs have no support for the proposition that the voluntary production of records in *Engage* constituted a seizure, a deficiency that is independently fatal to this claim.

## XIII. PLAINTIFFS FAIL TO STATE A RICO CLAIM.

Finally, Plaintiffs' RICO claim fails as well. "RICO liability is reserved for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (citation omitted). Accordingly, to plead a RICO claim, "[t]he gravity and extent of the misconduct must reflect that it is 'part of a prolonged criminal endeavor.'" *Ritu Bhambhani, LLC v. Neuraxis, Inc.*, 2023 WL

3688336, at *10 (D. Md. May 25, 2023) (citations omitted). Plaintiffs' allegations, founded on a single and reasonable civil enforcement action, come nowhere close to stating a RICO claim.

Plaintiffs first fail to plead anything resembling a pattern of racketeering activity. The sole purported racketeering actions alleged apart from the *Engage* litigation involve the transmission of "not disapproved" notifications from the Maryland State Police Licensing Division, regarding Mr. Minor's firearm purchases, sometime "[b]etween 2020 and 2024." Am. Compl. ¶ 133(a). But as previously explained, the Licensing Division is not a Defendant here and is not alleged to be part of any RICO enterprise, Defendants are not alleged to have had any role in these "not disapproved" communications, and these communications thus cannot be construed as the activity of Plaintiffs' alleged "enterprise." Mot. 47. Plaintiffs provide no response to these basic points and thus have forfeited any argument that the "not disapproved" notifications constitute racketeering activity in the alleged RICO enterprise.

The remaining alleged activity, comprising the *Engage* litigation, cannot constitute the requisite continuing pattern of activity under RICO. By definition, the filing and litigation of a single lawsuit does not amount to a "series of related predicates [that] extend[s] over a substantial period of time," as needed to demonstrate "closed-ended continuity" under RICO caselaw. *See US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 318 (4th Cir. 2010) (second alteration in original) (citation omitted). Nor does the litigation of a single case create "a reasonable expectation that the racketeering activity will 'extend[ ] indefinitely into the future,'" as needed to support "open-ended continuity." *Id.*; *see also Shapiro v. Shellpoint Mortg. Servicing*, 2023 WL 1108019, at *7 (D. Md. Jan. 30, 2023) (holding no RICO claim could be founded upon "a single business interaction over several months").

Further, Plaintiffs' purported RICO "enterprise" and "racketeering activity" are one and the same—namely, Defendants' participation in the *Engage* case. Plaintiffs maintain that the RICO enterprise at issue was composed of Defendants acting with the broad goal of "using government enforcement power to impose costs on lawful firearms retailers."[5] Not only is this allegation unsupported, but the only alleged actions by the purported "enterprise" concern the *Engage* litigation. *See* Opp. 25 (citing Am. Compl. ¶¶ 72, 133); Am. Compl. ¶ 72 (alleging that Defendants sought to "prosecute a civil action the Plaintiffs [sic] without legal grounds"); *id.* ¶ 133 (alleging, *inter alia*, that Defendants filed the "Engage complaint via the Maryland courts' electronic filing system"). Plaintiffs have accordingly failed to demonstrate a "RICO enterprise that existed separate and apart from the alleged racketeering activity." *See AARP v. Am. Fam. Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 797 (M.D.N.C. 2009).

Finally, Plaintiffs fail to show any plausible predicate criminal activity, including wire fraud or extortion, that could support their RICO claim. As to the alleged wire fraud, Plaintiffs again emphasize the "transmission of 'not disapproved notifications,'" though such messages cannot constitute predicate activity of the purported RICO enterprise here. *See Lambert v. Givens*, 2026 WL 1363070, at *4 (D. Idaho May 15, 2026) (explaining that to demonstrate a RICO enterprise, "the complaint must allege more than parallel conduct, overlapping business relationships, or a series of acts involving the same subject matter").

More fundamentally, the "not disapproved" communications accurately provided the results of the state background check and were not fraudulent. Plaintiffs argue that Defendants

[5] Plaintiffs fail to explain how Defendant Attorneys General, solely in their personal capacities, could "us[e] government enforcement power to impose costs on lawful firearms retailers." Opp. 25; *see Levy v. City of New Carrollton*, 2009 WL 10685579, at *14 (D. Md. Mar. 17, 2009) (holding that civil RICO claims cannot lie against governments).

were somehow aware of a federal investigation into Mr. Minor but "never disclosed that information to Plaintiffs," leading to "false representations upon which Plaintiffs relied to continue selling." Opp. 24. But Plaintiffs provide no basis for speculating how Defendants would be aware of a federal investigation or why Defendants would disclose an ongoing federal investigation to private parties in the context of background checks. In any event, the notifications regarding Mr. Minor—that he was not disapproved for certain firearm purchases—were accurate. Absent any plausible argument that Defendants made false statements, Plaintiffs cannot show any fraudulent predicate activity. *See United States v. Runne*r, 143 F.4th 146, 156 n.8 (2d Cir. 2025).

The remaining alleged "wire fraud" activity restates Plaintiffs' claim of defamation pertaining to the *Engage* litigation and the purported "specific false statements of fact" therein. Opp. 24. But courts are "universally hostile" to similar attempts to repackage defamation claims as RICO predicates. Mot. 48. Plaintiffs have no response to this well-established law. [6]

As to extortion, Plaintiffs argue merely that Defendants' actions in *Engage* constituted extortion under the Hobbs Act, 18 U.S.C. § 1951. But Plaintiffs ignore that "litigation activities" such as filing a lawsuit and making settlement demands cannot constitute extortion. Mot. 49.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action with prejudice.[7]

---

[6] Plaintiffs also mention "additional wire communications by which Defendants demanded monetary settlement, and sought to coerce regulatory compliance." Opp. 24. These conclusory allegations do not satisfy Rule 9(b). *See* Am. Compl. ¶ 133(a).

[7] Plaintiffs' request for leave to amend, Opp. 27, without filing a separate motion or attaching a proposed amended complaint should be denied. *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 628 (4th Cir. 2015); *Green v. iMentor, Inc.*, 2025 WL 3077594, at *6 (D. Md. Nov. 4, 2025). In any event, after failing to cure the deficiencies in their claims in the Amended Complaint, further amendment would be futile. *See Guillen v. Esper*, 2020 WL 3965007, at *12 (E.D. Va. July 13, 2020) ("[T]he Amended Complaint did nothing to remedy the issues in the first complaint, which makes clear that allowing additional amendments would be futile.").

Dated: June 22, 2026

Respectfully submitted,

THE STATE OF MARYLAND

**ANTHONY G. BROWN**
Attorney General of Maryland

*/s/ Michael Drezner*
Michael Drezner
Senior Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
T: (410) 576-6959
MDrezner@oag.state.md.us

*Attorney for Defendants Anthony Brown & the State of Maryland*

EVERYTOWN LAW

*/s/ Robert A Van Kirk*
Robert A. Van Kirk (pro hac vice)
Emma R. Zarriello (pro hac vice)
*/s/ Sararose Gaines*
Sararose Gaines (Bar No. 30832)
Williams & Connolly LLP
680 Maine Avenue, SW
Washington, D.C. 20024
T: (202) 434-5000
rvankirk@wc.com
ezarriello@wc.com
sgaines@wc.com

*Attorneys for Defendant Everytown Law*

THE DISTRICT OF COLUMBIA

**BRIAN SCHWALB**
Attorney General for the District of Columbia

Chad Copeland
Deputy Attorney General
Civil Litigation Division

*/s/ Adam J. Tuetken*
Adam J. Tuetken (*pro hac vice*)
Special Counsel for Firearm Safety
*/s/ Charles P. Lane*
Charles P. Lane (31136)
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW, 10th Floor
Washington, D.C. 20001
T: (202) 735-7474
adam.tuetken@dc.gov
charles.lane1@dc.gov

*Attorneys for Defendants Brian Schwalb & the District of Columbia*